McClelland, J.
This matter comes to be heard on the application for the removal of Frank Cowden as administrator of the estate of Fred A. Twellman, deceased.
■ The record discloses that Fred A. Twellman died in Franklin county, Ohio, intestate, and that Frank Cowden made application for administration upon the estate of the deceased, and that he qualified as such administrator. Leona Twellman has filed an application for the removal of such executor on the ground that she is his widow.
Upon hearing of the matter, we find that Fred A. Twellman and Leona Twellman or Leona Barnes, were both residents of the state of Missouri in 1923. They were married by a non-ceremonial marriage. The evidence discloses that they agreed to become man and wife and live *202 together as man and wife from on or before August 27, 1923, until sometime in 1926, when they left the state of Missouri and moved to Columbus, Ohio. They lived in Columbus as man- and wife until the latter part of 1929, when they separated, and no longer lived together thereafter. During the time they lived in Columbus as man and wife, they joined church as Mr. and Mrs. Twellman, introduced each other to their friends as husband and wife, and apparently all of their friends recognized them as husband and wife, and they were apparently acting in good faith on their part.
The evidence also shows that after their separation in 1929, Leona Twellman assumed her maiden name, that of Leona Barnes.
During the hearing, counsel for the applicant introduced in evidence the law of the state of Missouri, which provides “that persons entering into the marriage relationship in the state of Missouri must procure a license issued by a civil authority, and be married by some person authorized to perform a marriage ceremony in the state of Missouri. The statute further provides that the so-called “common-law marriages” are absolutely null and void in that state.”
This statute was in force at the time of the alleged marriage in Missouri in 1923. It is quite apparent then, that the alleged marriage in Missouri was null and void. It is a very well established principle of law that as far as marriages are concerned, the lex loci governs. A marriage valid where made, is valid everywhere; and a marriage invalid where made, is invalid everywhere.
It is therefore apparent that from a purely legal standpoint the two parties were living in a state of adultery in the state of Missouri, and came into the state of Ohio under the same status. In order, therefore, to legitimatize their relationship in Ohio, it became necessary to comply with the law of Ohio, relative to the creation of the common law marriage status.
In our opinion, the case of Dirion v. Brewer, Admr., et al, 20 Oh. App. 298, contains a correct statement of the law of Ohio as it stands today on that point. The first and second syllabi of that case read as follows:
“1. To constitute a common-law marriage there must have been an agreement to marry, carried out by living *203 together and cohabiting together as man and wife under and by virtue of that agreement.
“2. Relationship, having been established as illicit, is presumed to remain that way so long as cohabitation remains, and those who claim that another relation was established must show that some time thereafter it was changed either by a statutory marriage or by a common-law marriage under state laws.”
The case of Lumas v. Lumas, 26 Oh. App., 502, is another case, which we believe contains alsp a" correct statement of the law. Syllabi No. 1 and No. 2, contain the following:
“1. Where parties lived together in illicit relationship before plaintiff procured divorce from her husband, it is presumed that their living together thereafter continued to be illicit, and such cohabitation shows no relationship on which a common-law marriage contract may 'be predicated, especially in view of evidence showing their dealings with their individual property as though they were unmarried.
“2. To constitute a ‘common-law marriage’ there must at some time have been an agreement, either express or implied, that parties would live together as husband and wife, which agreement must be followed by cohabitation.”
We also read from page 50 of the above opinion where we find the following language: .
“In order to constitute a common-law marriage there must at some time have been an agreement, either express or implied, that these people would live together as husband and wife, and that must be followed by cohabitation. There are two elements, then, that must appear: namely, first, the promise to live together as husband and wife, and, second, the cohabitation, which must follow. Neither one nor the other wduld be sufficient, but both must exist.”
In examining these cases there is a strong inference that the court in considering both of these cases, considered the evidence clear and convincing, and that such a degree of proof was necessary in order to prove the existence of the relationship. In this case, Leona Twellman or Leona Barnes testified she considered themselves married from 1923 up until the date of the death of Mr. Twellman. The only evidence of an agreement, either express or implied, after they came to the state of Ohio, is contained in the statement of Leona Twellman herself. The record shows that the only questions put to Mrs. Twellman were answered in words as follows:
*204 “Q. Mrs. Twellman, did Fred give you a wedding ring in St. Louis? A. He did and I lost it and then after we came —
“Q. And did he give you a wedding ring again after you came back to Columbus? A. Yes, he did, and I have that at home.
“Q. All right, tell what conversation took place when he gave you that? A. Well, that was right after he quit working at the Hamilton Milk Company a short time.
“Mr. Baldwin: Object.
“The Court : She may testify.
“Q. Answer the question. A. Well, then after we came here he was working at the Hamilton Milk Company a short time and he brought me a wedding ring home and he says to me, he says “Leona, here is a ring to replace the one that you had lost in Chicago/’ and I belonged to church at that time and I says “Well, Fred, I think that we should go and have a ceremony because I says I was trying to do right and wanted to live right,” and I said — and he said it wasn’t necessary, we are man and wife in the eyes of the_ law and the world,” and that is the answer he gave me,' and I even wanted him to go to Rev. Kreager and have Rev. Kreager perform the ceremony and that is what he told me.
“Q. What did you say? A. I said “Well, if that is the case, all right, of course I did want a ceremony after we came up and was living at Fred’s stepfather because I thought it was really proper, just my idea about things, after I was going to church and was doing what I thought was really right.
“Q. And he said that you were — that it was all right, that you were man and wife in the eyes of the law and the world, that it was all right ? A. That is what he said, and said there was no marriage ceremony necessary, and after we had separated he came to me several different times, and talked to me on the street, and wanted me to come back to him.
“Q. Have you got that ring that he gave you in Columbus ? A. I have at home.”
In our opinion this language constitutes only a reaffirmation of the relationship which had been existing from 1923 up until the separation in 1929, and this testimony was not presented until after the court’s attention had been called to the statute of Missouri, by virtue of which the marriage there was invalid. The testimony also shows weakness as far as the probative value is concerned, in that it was made *205 by Mrs. Twellman herself, and in our opinion, is nothing more than a self-serving declaration, if competent at all.
. It is our opinion that in order to establish a common-law marriage, not only the element of living together, but also the element of a contract, express or implied, should be proven by testimony which is clear and convincing. In our mind, the testimony does not produce that degree of propf in the mind of this court.
In support of this position, I cannot refrain from quoting some of the language of Judge Hurin, in the case of Bates v. State of Ohio, 9 C. C. (N. S.), 273, as follows:
“But common-law marriages, however we are to understand that term, are'not yet so common as to be recognized anywhere as anything but exceptional. Our marriage laws are, and have always been, well known and understood, and a legitimate ceremonial marriage, either civil or religious, is the universal desire of all decent people contemplating matrimony.'
“To break down the bars established by the statute, to make possible the substitution of loose and uncertain requirements for the time honored fixed forms of the law is to open the way to all the forms of fraud and crime with which designing men may seek to destroy womanly virtue, and with which unscrupulous women may seek to appropriate the good name and wealth of men to whom in life they were perhaps perfect strangers.
“If a private arrangement without any formalities, and without any writing or any record or any witnesses, is to be upheld as a civil contract; if secret marriages, known only to the parties themselves and participated in by none other are to be authorized; if the state is to have no right to protect its own interests, it is but one step further to the practice, now publicly • advocated by certain notorious criminals and others, of having marriages on probation, the relation to cease at the will of either of the parties.”
We therefore conclude that Leona Twellman has failed to prove that the relationship existing between her and the decedent was a valid marriage relationship in the state of Ohio; that she is not the legal widow of the decedent and is not entitled to the administration of his estate. The application is therefore overruled, and an order may be drawn accordingly.