WILLIAM B. LAND *et al.*

*v.*

FRANK E. LAND *et al.*

*Opinion filed December 16, 1903.*

MARRIAGE—*what sufficient to constitute a valid marriage.* A ceremonial marriage entered into by both parties in good faith and in ignorance of the fact that the wife's decree of divorce, granted a few days before, had not been entered of record, is valid, where the parties continue to cohabit, with matrimonial intention, after the decree of divorce has been entered.

*Land* v. *Land*, 108 Ill. App. 131, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

The facts in this case, as stated by the Appellate Court in their opinion, are as follows:

"The appellant William B. Land, with other beneficiaries under the will of Nellie M. Land, deceased, and the appellant the Northern Trust Company, as trustee under said will, filed their bill seeking to have declared void the alleged marriage between said Nellie M. Land and the appellee Frank E. Land, and that said Frank be declared not to be entitled to any share in the estate of said Nellie; also for other and general relief. The other appellees, it is alleged, also claim an interest in said estate as assignees of the said Frank E. Land, and are made parties defendant.

"The defendants all answered and filed their cross-bill, by which they seek a decree that said Frank E. and Nellie M. Land were lawfully married on April 14, 1887, and at other dates thereafter, and that said Frank be declared the lawful surviving husband of said Nellie, entitled to share in her estate, both real and personal.

"The cross-bill was answered, issues made upon both the bill and cross-bill, and the cause referred to a master

to take testimony, which was done. The cause was tried by the chancellor upon the testimony and evidence taken and offered before the master, a decree entered dismissing the original bill for want of equity, and finding that said Nellie was, during said years last prior to her death, the lawful wife of said Frank, and that on her death, March 6, 1900, he became and now is her lawful widower, and as such entitled to his proper and lawful share in her estate; also that the cross-bill be retained for such further order or decree as might from time to time be advisable.    *    *    *

"The evidence shows, in substance, among other things not necessary to be stated, that the maiden name of said Nellie was Lillian or Nellie Moore; she was lawfully married to one Ralph S. Tuttle August 29, 1872, but obtained a decree of divorce from him in the superior court of Cook county, which was entered of record April 19, 1887; a hearing on her bill for divorce, which resulted in said decree, was had on April 9, 1887, and, at the close of the evidence, the judge, before whom the hearing was had, said, 'Decree;' said Nellie then went up to the judge and thanked him, and left the court, as the evidence tends to show, under the belief she had been granted a divorce from said Ralph S. Tuttle; on the same day, April 9, 1887, the evening issue of the *Daily News* of Chicago published an account of said hearing and stated, in substance, that a decree had been entered. Said Frank saw the said account of the said hearing of the divorce case about five o'clock the same day, and was given the same information by Mrs. Tuttle and Mrs. Sophronia Baker, a friend of Mrs. Tuttle, who was present at the hearing. Mrs. Tuttle and Land on the 14th of April, 1887, went from Chicago to LaPorte, Indiana, so that her adopted son, said William, who was then at school, could be present, and there they had a marriage ceremony performed between them, pursuant to a marriage license issued the same day by the clerk of the circuit

court of LaPorte county, Indiana, the ceremony purporting to have been solemnized by one 'W. Scott, rector;' after said marriage the said Nellie and Frank lived and cohabited together, and were known among their friends and associates as husband and wife for at least two years, first for a few days at LaPorte, Indiana, then for a short period at a sporting house kept by said Nellie on Dearborn street in Chicago, and the remainder of the time at the home of the said Frank on Park avenue, in Chicago. In the spring of 1889, said Frank, who had been engaged in the shoe business, failed, and soon thereafter said Nellie left the Park avenue house, and from that time up to her death kept a house or houses of assignation in Chicago, though during a part of the time she rented rooms or flats elsewhere which were, from time to time, occupied by her, said Frank and her adopted son, the appellant, William B. Land; at the places where she kept her houses of assignation the said Nellie was known and called by the name of 'Nellie M. Tuttle,' or 'Mrs. Tuttle,' the same name by which she was known prior to said marriage ceremony between her and Land; prior to said marriage ceremony said Nellie for many years was the proprietress of and kept a house or houses of assignation in Chicago, and, while engaged in that business, made the acquaintance of said Frank about the year 1885, from which date up to the time of said marriage ceremony she associated from time to time with Land, though there is no positive evidence of any illicit relations between them."

Upon appeal from the decree of the circuit court to the Appellate Court, said decree was affirmed; and the present appeal is prosecuted from such judgment of affirmance, so entered by the Appellate Court.

C. STUART BEATTIE, and HARRY VINCENT, for appellants.

CRATTY BROS., JARVIS & LATIMER, for appellees.

Per CURIAM: In its opinion deciding this case the Appellate Court say:

"The principal and controlling question, presented by the briefs of counsel and the oral arguments of the cause, is as to whether said Nellie M. and Frank E. Land were lawfully married during the lifetime of the former, and, if they were, then the decree is correct. * * * It is apparent from the evidence she (Nellie M. Land, formerly Nellie M. Tuttle,) began the divorce proceedings, which resulted in the decree mentioned, for the purpose of marrying said Frank; and it seems a fair and reasonable inference from the evidence that she intended, when she procured the divorce, to marry him and pursue thereafter a different and respectable life, and did so, as the evidence tends to show, from the time they commenced to live at the Park avenue house until Land failed in business, about two years afterwards. There is no evidence, which has been called to our attention, or which we have been able to discover, of any divided reputation as to the relations between said Nellie and Frank while they lived at the Park avenue house. On the contrary, during the whole of this period their ostensible relation was that of husband and wife, they being known as such among friends and acquaintances; and he introduced and spoke of her as his wife, and she introduced and spoke of him as her husband. During this period, and as late as the year 1891, Nellie M. Land, by that name, signed and acknowledged divers conveyances of real and personal property to different persons, and received conveyances under that name, in some of which she is described as the wife of Frank E. Land, and in others Frank E. Land is described as her husband.

"On February 3, 1889, she procured a judgment in the name of Nellie M. Land against Frank E. Land, a written satisfaction of which she acknowledged on January 30, 1891, before a notary public, under the same name. Under date of January 15, 1894, she executed her last

will, under which the appellants in this case claim their rights, by the name of Nellie M. Land.

"The clear preponderance of the evidence is, that the said Nellie and Frank fully believed, on April 14, 1887, that she had been divorced from said Tuttle, and that they in good faith intended, by virtue of said marriage ceremony, to contract a legal marriage, and would have done so but for the fact that her decree of divorce had not been entered of record. It does not appear that during her lifetime either she or said Frank had any knowledge that the divorce decree had not been entered at the time of the marriage ceremony. He testifies that he did not know of that fact until after her death.

"By decree of the county court appellant William B. Land was, February 3, 1883, upon the petition of Nellie M. Tuttle and Ralph S. Tuttle, legally adopted under the name of William Bliss Tuttle, by which name he seems to have been known and called up to the time the said Nellie M. and Frank E. Land began living together as husband and wife. From that time he became and was known and called William B. Land.

"It is claimed on behalf of appellants, and numerous authorities are cited in support of the contention, that said Nellie did not become the lawful wife of said Frank, mainly because of the fact that, at the time of the marriage ceremony, her divorce decree from Ralph S. Tuttle had not been entered—that this attempted marriage was void, and, being void, their subsequent life, as is shown by the evidence, was not such as to create a valid common law marriage. Especial reliance is placed upon the case of *Cartwright* v. *McGown*, 121 Ill. 388, in which the court uses the following language: 'Where both parties are married in the honest belief, founded on an apparently good reason, that they are capable of entering into the marriage contract, when in fact one of them is not, if they continue to cohabit as man and wife after the removal of the impediment to their lawful union, the law

will presume a common law marriage by the acts of the parties, in the absence of any evidence to prevent such presumption. In such a case there are many strong and cogent reasons for presuming a new marriage after the removal of the impediment, even though the parties may not have known of its removal. There the cohabitation, in ignorance of facts rendering it illegal, is not to be regarded as meretricious or criminal until the parties have knowledge of such facts. Their purpose in such a union is honorable marriage, which the law favors, and not mere illicit intercourse.'

"It is argued that there was no 'honest belief, founded upon an apparently good reason,' using the language of the Supreme Court, on the part of those parties for believing at the time of the marriage ceremony a divorce from Tuttle had been granted—that they should have looked to the court record instead of relying upon what the judge said, and the publication of the daily press. We think the parties were justified, under the circumstances above detailed, in believing that the divorce had been granted, and therefore the *Cartwright case* is not controlling.

"We are also of opinion that the contention of appellants' counsel, that their cohabitation was illicit in its inception, is not supported by the evidence, and, therefore, what was said in the *Cartwright case* in that regard does not avail appellants."

The Appellate Court, in its said opinion, makes reference to the cases, decided by this court, of *Robinson* v. *Ruprecht*, 191 Ill. 424, and *Manning* v. *Spurck*, 199 id. 447, and then proceeds as follows:

"In the last case cited [*Manning* v. *Spurck, supra,*] the court in its decision makes reference to both the *Cartwright* and *Robinson cases*, and makes use of the language quoted below, which, considered with reference to the facts of the case at bar, is controlling and decisive. The court say: 'The petitioner in this case presents a much

stronger and more meritorious case than was made in that one [referring to the *Robinson case*]. She has been guilty of no wrong or immorality, and did not enter into an adulterous and meretricious relation with James Selby. It is beyond question that there never was a doubt in her mind as to the propriety or legality of her relation to him, and that she was wholly innocent of any intent to do wrong. * * * It is probably a safe rule to say that, if parties to a marriage, in the beginning, desire and intend marriage in good faith, as a matter of fact, but an impediment exists, and the desire and intention continue after the impediment is removed, and the parties continue in the relation of husband and wife and cohabit as such, it is sufficient proof of a marriage. It cannot be doubted that both James Selby and Sarah Jane Selby believed, at the time of this marriage, that he had been divorced from her. It is not reasonable to suppose from the manner in which the parties lived, the prominence of James Selby as a well known citizen and the presence of his former wife in the same city, that he willingly incurred the risk of a criminal prosecution with knowledge, in fact, that the divorce was void. It is true that a relation which is illicit and meretricious in its inception is presumed to continue of the same character, and there must be evidence in such a case that there has been a change, and the relation has become matrimonial in intent and character. In this case, the original relation between these parties was not meretricious in its inception, which means merely lustful and pertaining to the character of prostitution. It is not possible to conceive that they intended anything except marriage when it was solemnized at Quincy, and from that time to the death of James Selby. When he procured the decree of divorce in Allen county, Indiana, it was not done with any intention of entering into any relation with the petitioner. Eight years elapsed between the divorce and their marriage, during which time there was no relation

between them, and there is no evidence that they even met during that time. There was no necessity of any change to a new relation after the death of Sarah Jane Selby, and there necessarily could not be any such proof from the fact that there was never any question of the legality of the marriage. It was not necessary, as it was in *Robinson* v. *Ruprecht, supra,* to prove that the cohabitation had lost its lustful character and become matrimonial in character. The relation of the parties after the impediment was removed by the death of Sarah Jane Selby was matrimonial in fact, as it had been in the honest belief and intent of the parties before that time. We think that the evidence proves a common law marriage, and that the master and chancellor were right in their conclusion that the petitioner was the wife of James Selby at the time of his death.'

"It seems to us unnecessary, in view of the decision in the *Manning case*, which is so closely analogous in its facts to this case, to discuss the other claims of counsel or the application of the various other authorities referred to by him.

"We are of opinion that the evidence in that regard shows that said Nellie and Frank intended, at the time of the marriage ceremony, to enter into the marriage relation, and having lived together continuously as husband and wife for two years after the entry of the decree of divorce in favor of said Nellie from said Ralph S. Tuttle, it cannot be said that their relation was meretricious, but it was matrimonial in character; that, as soon as the impediment against said Nellie's entering into the marriage contract was removed by the divorce, their relation became, as is said by the court in the *Manning case,* 'matrimonial in fact, as it had been in the honest belief and intent of the parties before that time.'

"We think the evidence clearly sustains the decree of the chancellor, and it is therefore affirmed."

We concur in the views above expressed by the Appellate Court, and adopt the same as the opinion of this court. Accordingly, the judgment of the Appellate Court is affirmed.

.        *Judgment affirmed.*