Marshall, C. J.
 

 On December 6, 1923, A. L. Johnson died intestate, seized of certain real estate situate in Stark county, Ohio. On April 28, 1924,
 
 *137
 
 Rose Wolford, a sister, joined with her brother and nephew's in filing a partition suit to apart his real estate, and made Zora E. Johnson a party, alleging that Mrs. Johnson claimed some interest in the estate. Mrs. Johnson answered, claiming to be his lawful wife and sole heir, and that the real estate descended to her in fee simple. Mrs. Wolford replied, denying the legality of the marriage, or that they resided together as lawfully wedded husband and wife. Upon this issue a large volume of evidence was taken which develops a complicated state of affairs in the life of Johnson.
 

 On December 11, 1879, Johnson married Laura Yogt McCool by a ceremonial marriage. Laura Vogt had married a man by the name of- McCool, and this record leaves in doubt whether McCool was dead or divorced from Laura at the time of her marriage to Johnson.
 

 On September 13, 1894, Johnson was married to Lida Welsh. This record does not disclose with certainty whether he had secured a divorce from Laura or she from him.
 

 On June 8, 1915, Lida secured a divorce from Johnson, and the decree found as a fact that they had been legally married.
 

 On June 16, 1915, Johnson married Zora E. Francis, by a ceremonial marriage, at Columbiana county, Ohio, and they cohabited as husband and wife, and were recognized and believed to be legally married. These relations continued until his death on December 6, 1923.
 

 On November 4, 1923, Laura Yogt McCool Johnson died; her death occurring a little more than a month prior to the death of Johnson. There is
 
 *138
 
 a conflict in the testimony as to whether Johnson and his wife, Zora, knew of the decease of Laura before his death.
 

 This record fairly discloses that Zora E. Johnson believed that A. L. Johnson was free from any other matrimonial entanglements at the time of her marriage to him, that she always believed her marriage to be valid, and that she never entertained any doubt upon this point except as doubt was thrown upon it by the issues raised and the evidence adduced in this litigation.
 

 The foregoing facts give rise to the following pertinent observations: If Laura McCool had a husband living from whom she had never been legally divorced, on December 11,
 
 1879,
 
 then her marriage to Johnson was not valid. If she w;as legally separated from McCool prior to her marriage to Johnson, then her marriage to Johnson was valid, and it follows that his subsequent marriages to Lida Welsh and Zora Francis would be illegal at the time they were respectively contracted.
 

 We need not be concerned about the marriage with Lida Welsh, because she was decreed a separation prior to the marriage to Zora Francis.
 

 The case was first heard in the court of common pleas, and afterward appealed to the Court of Appeals, where it was tried
 
 de novo.
 
 That court determined the issues in favor of the sister, brother, and nephews, and found as a legal conclusion that Zora was not the widow or heir at law.- That court made no findings of fact. Error has been prosecuted to this court.
 

 One of the questions argued in this court re
 
 *139
 
 lates to the burden of proof; it being argued on behalf of Mrs. Johnson that the burden was upon Mrs. Wolford, the decedent’s sister, to prove that Laura Yogt McCool was legally separated from her husband before her marriage to Johnson, and that that burden was not sustained in the trial in the Court of Appeals. It was argued on behalf of Mrs. Wolford that the burden was upon Mrs. Johnson to prove that Johnson was legally separated from Laura McCool before his, marriage to Zora Francis.
 

 These questions would challenge our serious attention, except for the fact that Laura McCool Johnson died before the death of Johnson, and we shall therefore dispose of the issues by determining the effect of the death of Laura McCool prior to the death of Johnson and during the time Johnson and Zora were cohabiting as husband and wife, believing themselves to be legally married.
 

 The view we have taken of this matter, and the conclusions we have reached upon that question, make it unnecessary to determine whether or not Laura Yogt McCool was free to contract marriage on December 11, 1879, or whether Johnson was free to contract marriage with Zora Francis on June 16, 1915.
 

 Counsel for Mrs. Johnson have argued the proposition that, even if Johnson’s marriage to Laura McCool was valid and subsisting at the time of his marriage to Zora E. Francis, so that the latter marriage was void when contracted, nevertheless, when the impediment to the marriage was removed by the death of the first wife, the latter marriage was ratified and validated by the subsequently con
 
 *140
 
 tinued cohabitation of the parties; the intent and actual agreement to be married which inhered in the ceremonial marriage innocently contracted by Zora E. Johnson being imputed by the law to the cohabitation after death of the first wife, so as to establish a valid marriage at common law.
 

 Counsel for both parties have discussed the case of
 
 Industrial Commission
 
 v.
 
 Dell,
 
 104 Ohio St., 389, 135 N. E., 669, 34 A. L. R., 422, and entertain conflicting views as to the applicability of the principles declared in that case to the instant controversy. It was declared in that case, that, where a marriage has been lawfully solemnized, it is presumed that the status of the parties continues, and the burden is upon the parties claiming that the status has been changed, or has ceased, to overcome that presumption. That case differed from the instant case in that the controversy was between two women, each of whom had been ceremonially married to a person since deceased, and neither of the women knew of the relations of the other until after the death of the husband. It was therefore held that the rights of the woman first married were superior in equity to the rights of the second wife; there being no evidence whatever upon the subject of the husband having procured a divorce from his first wife. In the instant case the controversy is not between two wives of one husband, it being clear that the first wife is deceased, and that there were no children of that marriage, and the .only question for determination is whether the marriage contract with Zora E. Francis was good between the parties from and after the date of the death of the first wife.
 

 
 *141
 
 The courts of this state have for many years recognized the validity of a common-law marriage, and in more than one case have discussed in a general way the essential requirements of a valid common-law marriage. It has been held that the parties must be competent to enter into the marriage contract; that there must be a contract in words of present tense; and that such contract must be followed by cohabitation. Each and all of the cases which have been decided by this court bearing upon the subject of common-law marriages have been decided upon the peculiar facts of those cases, and it has not at any time been declared by this court that the limitations of those cases become binding limitations upon all future cases. Strange as it may seem, this court has never heretofore had presented to it a controversy having any points of similarity to the instant case.
 

 If the marriage between Johnson and Zora Francis, in 1915, had been other than a ceremonial marriage, or if Zora Francis had known, or had reasonable grounds to believe, that Johnson had a wife living at the time of that ceremony, and had proceeded in disregard of such knowledge or belief, or if she had learned at any time during the period of their cohabitation that Johnson was not competent to contract marriage at the time of the ceremony, or if there had been a separation, whether voluntary or legal, prior to the death of Laura McCool Johnson, or if for any other reason the relation between Johnson and Zora had been a mere meretricious cohabitation, this court would without hesitation hold that there was no valid marriage, even under the rules of the common law,
 
 *142
 
 without a new agreement after the death of Laura McCool Johnson, followed by continued cohabitation.
 

 While this court has never dealt with this or a similar proposition, the courts of other states of the Union, and the English courts, have heard and decided similar questions in a great number of cases. In every case which has been brought to our attention by the diligence of counsel, and which has been examined by us, where there was a ceremonial marriage, and the parties believed that they were competent to enter into the marriage contract, but an impediment in fact existed, which impediment was later removed, and the parties cohabited before and after the removal of the impediment, the ceremonial marriage thus innocently contracted was held to have become a valid marriage upon removal of the impediment.
 

 In some of these cases the parties cohabited for many years after the removal of the impediment, and it was but natural that the court should base the decision upon the fact of such long continuance and the presumptions arising therefrom. In other cases there had been a subsequent agreement in words of present tense. In other cases the cohabitation continued for shorter periods, without any subsequent agreement whatever, and in those cases the court based the judgment upon the legal presumption that the parties renewed their consent, even though no such agreement or consent was shown. Some of those cases hold that continued cohabitation evidences consent to live in wedlock, even though the existence of the impediment and its removal are unknown. The courts have declared
 
 *143
 
 in several cases that cohabitation after removal of the disability makes the parties husband and wife in law from the moment that such disability no longer exists, even though there are no special circumstances to indicate that the parties expressly renewed their consent.
 

 In re Crandall’s Estate,
 
 214 App. Div., 363, 366, 212 N. Y. S., 210, 212, it was held:
 

 “It makes no difference whether such decision is based upon the theory that the courts will infer a consent, or whether it is found as a fact from the .conduct of the parties in holding each other out as husband and wife and occupying that relationship. The parties, during all those years, intended to live in lawful wedlock. Courts will not be solicitous to find a way to nullify such intent and to make the relationship which the parties deemed lawful and sacred unlawful and immoral.”
 

 In
 
 Campbell
 
 v.
 
 Campbell,
 
 1 L. R. H. L., Scotch & Divorce App. Cas., 182, the English House of Lords declared principles in harmony with the conclusions we have reached.
 

 The following cases support the conclusion that an illegal marriage innocently contracted becomes valid upon removal of the impediment:
 
 Prince
 
 v.
 
 Edwards,
 
 175 Ala., 532, 57 So., 714;
 
 Woodward Iron Co.
 
 v.
 
 Bradford,
 
 206 Ala., 447, 90 So., 803;
 
 Poole
 
 v.
 
 People,
 
 24 Colo., 510, 52 P., 1025, 65 Am. St. Rep., 245;
 
 Hamilton
 
 v.
 
 Bell,
 
 161 Ga., 739, 132 S. E., 83;
 
 Smith
 
 v.
 
 Reed,
 
 145 Ga., 724, 89 S. E., 815, L. R. A., 1917A, 492;
 
 Schuchart
 
 v.
 
 Schuchart,
 
 61 Kan., 597, 60 P., 311, 50 L. R. A., 180, 78 Am. St. Rep., 342;
 
 Robinson
 
 v.
 
 Ruprecht,
 
 191 Ill., 424, 61 N. E., 631;
 
 *144
 

 Manning
 
 v.
 
 Spurck,
 
 199 Ill., 447, 65 N. E., 342;
 
 Land
 
 v.
 
 Land,
 
 206 Ill., 288, 68 N. E., 1109, 99 Am. St. Rep., 171;
 
 Blanchard
 
 v.
 
 Lambert,
 
 43 Iowa, 228, 22 Am. Rep., 245;
 
 Barker
 
 v.
 
 Valentine,
 
 125 Mich., 336, 84 N. W., 297, 51 L. R. A., 787, 84 Am. St. Rep., 578;
 
 Sims
 
 v.
 
 Sims,
 
 122 Miss., 745, 85 So., 73;
 
 Eaton
 
 v.
 
 Eaton,
 
 66 Neb., 676, 92 N. W., 995, 60 L. R. A., 605, 1 Ann. Cas., 199;
 
 Clark
 
 v.
 
 Clark,
 
 44 Nev., 44, 189 P., 676, 194 P., 96;
 
 Robinson
 
 v.
 
 Robinson;
 
 82 N. J. Eq., 466, 88 A., 951;
 
 Robinson
 
 v.
 
 Robinson,
 
 84 N. J. Eq., 201, 93 A., 699;
 
 Chamberlain
 
 v.
 
 Chamberlain,
 
 68 N. J. Eq., 736, 62 A., 680, 3 L. R. A., (N. S.), 244, 111 Am. St. Rep., 658, 6 Ann. Cas., 483;
 
 Geiger
 
 v.
 
 Ryan,
 
 123 App. Div., 722, 108 N. Y. S., 13;
 
 In re Wells Estate,
 
 123 App. Div., 79, 108 N. Y. S., 164;
 
 Mudd
 
 v.
 
 Perry,
 
 108 Okl., 168, 235 P., 479;
 
 In re Thewlis’ Estate,
 
 217 Pa., 307, 66 A., 519.
 

 Each and all of the foregoing cases support the conclusions we have reached, and those conclusions are also in harmony with text-writers on that subject. See 38 Corpus Juris, 1297; 18 Ruling Case Law, 436; 1 Bishop on Marriage, Divorce and Separation, Sections 970, 979.
 

 The foregoing are not by any means all of the cases which might be cited. The authorities are in such perfect harmony, and there is such uniformity among the decisions, and such absence of any contrary declarations, that we have no difficulty in declaring that as between Zora E. Johnson and the brothers and sisters of Johnson the claims of Zora E. Johnson must prevail.
 

 ,The judgment of the Court of Appeals will there
 
 *145
 
 fore be reversed, and final judgment entered in favor of the widow, Zora E. Johnson.
 

 Judgment reversed and judgment for plaintiff in error.
 

 Day, Allen, Jones and Matthias, JJ., concur.