ABBOTT, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

(No. 693—Decided December 13, 1946.)

*Messrs. Graham & Graham* and *Mr. R. N. Larrimer,* for appellant.

*Mr. Hugh S. Jenkins,* attorney general, *Mr. C. G. L. Yearick* and *Mr. R. Brooke Alloway,* for appellee.

MONTGOMERY, J.   The claimant, appellant here, filed with the Industrial Commission of Ohio a claim for compensation under the provisions of Section 1465-82, General Code, on the ground that she was the widow and dependent of the decedent, Bernard Abbott, who, concededly, was an employee of an employer amenable to the provisions of the Workmen's Compensation Act,

and was killed in the usual course of his employment.

Rehearing having been granted, the right of the claimant to participate was denied, and from that action of the Industrial Commission an appeal was perfected to the Court of Common Pleas of Muskingum county. The commission defended upon the ground that the claimant was not the widow or a lawful dependent of the decedent. The trial court having rendered judgment for the commission, defendant below, this appeal was perfected to this court.

There are three assignments of error: First, that the court did not file, as requested, a separate finding of facts and conclusions of law; second, error in the admission of evidence; and third, that the judgment of the court was manifestly contrary to the weight of the evidence.

It is the common understanding, and the more general practice, that when request is made for a separate finding of facts and conclusions of law, the same shall be clearly stated, and such finding shall be filed and journalized. Such is not the requirement of the statute governing that matter. The section is 11421-2, General Code, which is in the following language:

"When questions of fact are tried by the court, its findings may be general for the plaintiff or defendant, unless, with a view of excepting to the court's decision upon questions of law involved in the trial, one of the parties so requests, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."

The trial court did, in our judgment, sufficiently comply with the requirements of that section in the written opinion which he filed. While the separate conclusions might have been set forth in more concise terms, there can be no question from a reading of

that opinion what the court determined, both as to the facts and as to the law.

The case on which claimant relies chiefly to sustain her contention that the filing of an opinion was insufficient is that of *Gray* v. *Field,* 19 W. L. B., 121, 10 Dec. Rep., 170, a decision of the Hamilton County District Court, rendered in December 1884. It will be noted that the syllabus, there holding the filing of the opinion insufficient and discussing the opinion, says: "Which does not state the conclusions of all the vital facts." And the court in the course of its opinion, on page 122, after discussing the state of the record, says: "For if not prejudiced, such error is not cause of reversal."

The first paragraph of the syllabus in the case of *Oxford Township* v. *Columbia,* 38 Ohio St., 87, is:

"1. Where a party requests that the court state separately the conclusions of law and fact under the civil code, Sec. 280 (Rev. Stats. Sec. 5205), and the request is not complied with, a judgment against such party should be reversed, unless it appear from the record that he was not prejudiced by the refusal."

It is true that the Supreme Court in the much later case of *Cleveland Produce Co.* v. *Dennert,* 104 Ohio St., 149, 135 N. E., 531, when restating the mandatory character of the predecessor of the section now under consideration, distinguishes the *Oxford Township case, supra.* But in his opinion Chief Justice Marshall says:

"We are of the opinion, however, that section 11470, General Code, does confer a substantial right and that a denial of that right constitutes such error as should cause this court to reverse the judgment, unless it can be determined by this court without weighing the evidence that plaintiff in error has not been prejudiced."

From a reading of the record in the instant case we fail to see how the claimant was prejudiced, even though no finding should have been filed by the trial

court. The stipulation entered into at the beginning of the trial in the lower court recites:

"That the record shall show at the close of plaintiff's case a motion by defendant for a directed verdict or finding in favor of defendant and that the plaintiff is not entitled to participate in the State Insurance Fund, and in the event of an adverse ruling on said motion, the renewal of said motion at the conclusion of all the evidence."

Either one of those motions might well have been sustained. In order to arrive at the proper decision in this case it was not necessary for the trial court, and it is not necessary for us, to weigh the evidence. The essential facts are not disputed. Therefore, it comes within the qualification laid down by Judge Marshall in the *Cleveland Produce Co. case, supra.*

Let us consider briefly the facts: More than 50 years ago, and the claimant is conflicting in her statements and does not state clearly the date of it, she, being then, perhaps, 15 years of age, contracted a marriage with a man named Samuel H. Renker in the state of Pennsylvania. She lived with him a few weeks in Pennsylvania and in the city of Cleveland, when they were separated, and she has had no contact with him since.

In the year 1902 she began to cohabit with a man in the state of Ohio named William H. Medley, and this continued for 27 years, at the end of which time they separated. The question is whether this was a common-law marriage, or simply an illegal cohabitation, which question we will discuss later. It is conceded that there was no divorce between these parties.

On July 29, 1939, this claimant married the decedent, Bernard Abbott, and lived with him until September 17, 1940, the date of his death.

During the pendency of the application before the Industrial Commission this claimant brought an action in the Common Pleas Court of Muskingum county to annul the ancient marriage with Samuel H. Renker, and, he consenting, the Court of Common Pleas, with a nonresident judge sitting, entered a decree of annulment.

That proposition is stressed by claimant, but it gives us no concern. Nor are we concerned with the claim made that an attack upon it is a collateral attack. Obviously, that annulment decree could be of no effect here, having been obtained at the time it was obtained, because all rights of the parties hereto, such as may have existed on either side, had matured before that annulment action was brought or the decree obtained. The right to participate in benefits due to the death of Bernard Abbott must be determined as of the date of his death. If her marriage with Renker was valid and subsisting, then her two subsequent performances were illegal and invalid. If the Renker marriage were not subsisting, and she later contracted a common-law marriage with Medley, then she could not claim as a dependent of Abbott. If either of those former marriages was valid and in full force at the time of her marriage to Abbott, she was simply guilty of bigamy at that time.

We find an interesting case discussing a similar situation in *Vaughan* v. *Dalton-Lard Lumber Co.*, 119 La., 61, 43 So., 926, a decision of the Supreme Court of Louisiana. The three paragraphs of the syllabus of that case are:

"1. Under article 2315 of the Civil Code of 1870, as amended by Act No. 71, p. 94, of 1884, the right to sue for damages for the death of the husband, or for personal injuries suffered by him, is restricted to his lawful wife or widow, and cannot be extended by con-

struction so as to include his putative wife by a bigamous marriage. In the case at bar both women were living at the time of the death of the husband.

"2. Such statutory right of action, arising after the death of the husband is not one of the civil effects of marriage which inures to the benefit of the putative wife under articles 117 and 118 of the Civil Code.

"3. Article 2315 of the Civil Code, as amended, should be strictly construed, and the exceptional right of action granted therein should be restricted to the classes of persons specially designated as beneficiaries. All classes not expressly included are excluded."

Was the Renker marriage valid? The general proposition is noted in the case of *Evans v. Reynolds,* 32 Ohio St., 163, the second paragraph of the syllabus of which is:

"A marriage, solemnized in due form, is presumed to be lawful until some enactment which annuls it is produced and proved by those who deny its validity."

Section 12102-31, General Code, says:

"Every court of this state shall take judicial notice of the statutes of every state, territory and other jurisdiction of the United States."

The law of Pennsylvania as to the issuance of marriage licenses is found in Pennsylvania Laws of 1885, No. 115. It is long, imposes definite and specific obligations upon the clerk of a court issuing a marriage license as to finding out whether there be any impediment thereto, provides that a marriage license shall not issue to persons under 21 years of age without the consent of their parents or guardians, and imposes a penalty upon any clerk issuing such marriage license without such written and verified consent. It does not by its terms invalidate the marriage.

It is the generally accepted and correct rule that, in the construction of the statutes of another state, the

construction, if any, placed thereon by the courts of that state shall determine the courts of this state. If there had been no construction of that Pennsylvania statute, or its predecessor, we would construe it to hold that it does not invalidate the marriage. But Pennsylvania courts have spoken. In the year 1856, in the case of *Beelman* v. *Roush,* 26 Pa. (2 Casey), 509, the Supreme Court of Pennsylvania in the course of the opinion on page 511, says:

"It is true that no justice of the peace or minister may marry a minor without the consent of the parent, but that does not affect the validity of the marriage itself, much less of the previous contract between the parties."

Counsel for the Industrial Commission in their brief call attention to a number of Pennsylvania cases of more recent date to the same effect. They, however, but adhere to the holding in the *Beelman case, supra.* Such holding seems clearly to be the law of Pennsylvania, and, consequently, the law to be applied in Ohio.

Attention is directed to the discussion contained in 32 Ohio Jurisprudence, 269, 270, 271, from which we quote:

"In Ohio, in accordance with the rule prevailing in all jurisdictions, the validity of a marriage is determined by the law of the place where the contract is entered into. If valid where it is solemnized, it is valid everywhere; if invalid there, it is invalid elsewhere. * * * The better rule, however, is that capacity or incapacity to marry depends on the law of the place where the marriage is celebrated, and not on that of the domicil of the parties."

We hold that the claimant's marriage to Samuel H. Renker was valid, at least, until the time of its annulment by the Common Pleas Court of Muskingum

county, and, as heretofore stated, that belated annulment cannot affect the rights of the parties in the instant case. Were we wrong in our conclusion as to the Renker marriage, and if it were void at the time of the commencement of the relationship with Medley, we would hold that the arrangement was such as to constitute a common-law marriage in Ohio. The evidence clearly shows such a condition as to bring it within the latest pronouncement of the Supreme Court as it appears in the case of *Markley* v. *Hudson*, 143 Ohio St., 163, 54 N. E. (2d), 304, the first paragraph of the syllabus of which is:

"1. An agreement to marry *in praesenti*, made by parties competent to contract, accompanied and followed by cohabitation, as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage."

That *Markley case* distinguishes the earlier case of *In re Estate of Redman*, 135 Ohio St., 554, 21 N. E. (2d), 659, because in the *Redman case* the record showed that the beginning of the relationship between the parties therein involved was simply one of illegal cohabitation.

And in addition to those facts which bring the Medley agreement within the provisions set forth in the *Markley case*, there is, then, the significant fact that Medley and this woman did adopt a child in the Probate Court of Coshocton county. They did it as husband and wife, and their application, which both of them signed, sets forth that they were at that time husband and wife.

Referring to the claim of admission of improper evidence, so far as the Medley situation is concerned, it is true that the trial court permitted the asking, and answering, of leading questions while Medley was

upon the stand, and that should not have been done, but, regardless of that, none of it was contradicted by this woman. And, in any event, it is not prejudicial, in view of our holding with reference to the Renker marriage.

In our judgment, therefore, there is no question that the Renker marriage was valid, but, even if it were not, then the Medley arrangement constituted a valid common-law marriage, and, in either event, the subsequent marriage of this claimant to Abbott was a bigamous one and invalid, and prohibited her from participating in the fund in question.

The judgment is affirmed.

*Judgment affirmed.*

SHERICK, P. J., and PUTNAM, J., concur.