Ollie V. DENNIS, Petitioner,

v.

**RAILROAD RETIREMENT
BOARD, Respondent.**

No. 76–2111.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1978.

Decided Sept. 15, 1978.

Gilbert A. Sheard, Cincinnati, Ohio, for petitioner.

Dale G. Zimmerman, Gen. Counsel, Railroad Retirement Bd., Michael C. Litt, Chicago, Ill., for respondent.

Before ENGEL and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge:

We herein review respondent Railroad Retirement Board's decision holding that petitioner is not the widow of the insured deceased railroad employee George Dennis and therefore is not entitled to a widow's insurance annuity under § 5 of the Railroad Retirement Act of 1937, 45 U.S.C. § 228e. In making the crucial determination that petitioner was not the widow of George Dennis for the purposes of the Railroad Retirement Act, respondent Board applied what it considered to be the law of the State of Ohio, as required in this case by the Railroad Retirement Act. We reverse.

## I.

George Dennis was born in Georgia early in this century. The exact date is not certain. There was evidence presented in this case to support a finding that George Dennis was born in 1903, in 1905, or in 1906.

The date of George's birth is critical because on May 15, 1920, he married a woman by the name of Jewell. The minimum age for a man to marry legally in Georgia, where George and Jewell lived and were married, was seventeen. Ga. Civil Code No. 2931. If George had been born on March 14, 1903, a date supported by some of the evidence in the case, he was old enough legally to enter into a marriage with Jewell. If, on the other hand, George had been born April 14, 1906, the date found by an Ohio Probate Court, he was not of sufficient age.

After the "marriage," George and Jewell lived together for a number of years (there was conflicting evidence as to the exact number of years) until they moved to Cincinnati, Ohio. There they separated, but did not obtain a divorce.

On October 17, 1935, George married petitioner, the former Ollie Mills. At that time, George swore in his application for a marriage license that he was single, and according to petitioner, she was unaware of George's previous marriage. George and petitioner lived together as man and wife for over thirty years until George died on April 9, 1971. At that time, they were residing in Cincinnati, Ohio.

In 1971, Jewell applied for a widow's annuity under the Railroad Retirement Act, and the Board awarded her the annuity upon receiving proof of the 1920 marriage to George. Petitioner also applied for the annuity in 1971 and supplied the proof of her 1935 marriage to George. The respondent Board denied her application on the ground that Jewell was the widow of George. The Board informed petitioner that under the laws of Ohio, the applicable state law in this instance, the first of several marriages an individual enters into is not presumed to have been terminated before the subsequent marriage or marriages and that there was no evidence that the marriage between George and Jewell had been terminated.

Petitioner applied again in 1973 for the annuity. This time petitioner provided the Board with a copy of an opinion issued by the Court of Common Pleas, Probate Division, Hamilton County, Ohio, in the case of *James Dennis, Administrator of the Estate of George Dennis, Deceased v. Jewell Dennis, et al.*, No. 3097. This decision was rendered in a contested proceeding, in which Jewell testified, and the court held that under the law of Ohio petitioner was the widow of George Dennis. The Ohio Probate Court found that George Dennis was born on April 14, 1906, and was therefore under the legal age for marriage in Georgia at the time of his marriage to Jewell in 1920, and thus that there was no pre-existing legal marriage to invalidate petitioner's marriage to George under Ohio law.

Respondent Board did not, however, accept the Ohio Probate Court opinion and again denied petitioner's application. In its decision, the Board stated that although "respect" was to be accorded to the findings of state courts, the Ohio Probate Court in this case had "committed error obvious on the face of the decree." According to the Board, there had been a valid marriage between George and Jewell because the continued cohabitation of George and Jewell, once George did reach the age of consent, ratified the marriage, which ratification, in the absence of evidence that the marriage had been terminated, made Jewell the widow.

## II.

The Railroad Retirement Act incorporates by reference § 216(h)(1)(A) of the Social Security Act, 42 U.S.C. § 416(h)(1)(A), to determine when a woman is a widow of a deceased insured railroad employee. That statutory provision provides that an applicant for a widow's insurance annuity is to be considered the "widow" of the deceased railroad employee if the courts of the state in which the employ-

ee was domiciled at the time of his death would find that the employee and the applicant were validly married at that time.[1] Respondent Board thus had in the present case the task of determining whether under Ohio law Jewell or petitioner was the widow of the deceased railroad employee George Dennis and held that Jewell was.

On appeal to this Court, petitioner contends that the respondent Board committed error in not accepting the Ohio Probate Court's determination that under Ohio law she was the widow of George Dennis. Petitioner refers to the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that in diversity cases state law provides the rule of decision in substantive law matters and argues that this doctrine, applied in the context of a federal statute that incorporates by reference state law, should require respondent Board to accept the Ohio Probate Court decision.

The issue in contention here, however, is not whether state law applies. It does by statutory mandate. The issue is whether a state trial court opinion has a binding effect upon a federal tribunal that must determine state law in interpreting a federal statute. The Supreme Court in *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), has indicated that such an opinion is not binding.

> [W]hen the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should . . . not be controlling. This is but an application of the rule of *Erie R. Co. v. Tompkins, supra,* where [the] state law as announced by the highest court of the State is to be followed. This is not a diversity case but the same principle may be applied for the same reasons, *viz.,* the underlying substantive rule involved is based on state law and the State's highest court is the best authority of its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to [the] relevant rulings of other courts of the State.

■ This principle applies in the administration of the Railroad Retirement Act—even when a state trial court decree may adjudicate the very question before the Board. Since the determinations of the Social Security Administration as to family status are under the same statutory authority as those of the Railroad Retirement Board, what was stated by the Fourth Circuit in *Cain v. Secretary of Health, Education, and Welfare*, 377 F.2d 55, 58 (4th Cir. 1967), concerning a Social Security case before it, is pertinent here.

> The Secretary was under no constitutional compulsion to give full faith and credit to the state court decree; he was only under a statutory compulsion to determine what "the courts" of South Carolina would find in regard to Mr. Cain's marital status at the time he died. . . . Section 416(h) [§ 216(h) of the Social Security Act] contemplates that the Secretary determine the law of the state as it

1. Section 5(*l*)(1) of the Railroad Retirement Act of 1937, 45 U.S.C. § 228e(*l*)(1), provides in pertinent part:

> "(*l*) Definitions.—* * *
> "(1) * * * In determining for purposes of this section * * * whether an applicant is the * * * widow * * * of an employee as claimed, the rules set forth in section 216(h) of the Social Security Act shall be applied * * *."
> Section 216(h)(1)(A) of the Social Security Act (42 U.S.C. § 416(h)(1)(A)) provides, in pertinent part, as follows:
> "An applicant is the * * * widow * * * of a fully or currently insured individual for purposes of this [title] if the courts of the

State in which such insured individual * * * was domiciled at the time of death * * * would find that such applicant and such insured individual were validly married * * * at the time he died. If such courts would not find that such applicant and such insured individual were validly married at such time, such applicant shall, nevertheless be deemed to be the * * * widow * * * of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a * * * widow * * * of such insured individual."

has been declared by the Supreme Court of the state. Where, as here, the Supreme Court has not had [the] occasion to declare the law, the Secretary may follow the opinion of a *nisi prius* court; but if he believes its decision to be in conflict with what the Supreme Court "would find" were the point presented to it, he may disregard that lower court's decision. The same can be said about the respondent Board's determination of petitioner's status in relation to George Dennis.

■ This is not to say that federal tribunals may ignore lower state court decisions. It must be emphasized that lower state court opinions are entitled to considerable deference, especially when the state law is in an area of law traditionally preserved to the states.

This Court in *Gray v. Richardson*, 474 F.2d 1370 (6th Cir. 1973), made that point quite clear. At stake in *Gray* were Social Security benefits for a child of a deceased wage earner. An Ohio Probate Court had made a determination that the child was legitimate, but the Secretary of Health, Education, and Welfare did not accept that determination and denied benefits. This Court reversed and stated:

Although the Secretary is not bound by the decision of a State trial court in a proceeding to which he was not a party, we hold that he is not free to ignore an adjudication of a state trial court where it is fair and consistent with the law as enunciated by the highest court of the State. *Legory v. Finch*, 424 F.2d 406 (3rd Cir. 1970). We are convinced that the Supreme Court of Ohio would hold, under the facts of the presented case, that the right of Tamara Lynn Gray under the

Ohio law of intestate succession would be controlled by the decision of the Common Pleas Court in the contested divorce proceedings.

Since this is a situation falling within the general category of domestic relations, special deference should be given by federal tribunals to the resolution by the State court. Traditionally the states, not the federal government, have been considered the exclusive arbiter of these problems. (Citations omitted.)

We therefore hold that the Secretary should have accepted the determination made by the State court. Such a holding is proper in the present case where the following prerequisites are found: 1) An issue in a claim for social security benefits previously has been determined by a State court of competent jurisdiction; 2) this issue was genuinely contested before the State court by parties with opposing interests; 3) the issue falls within the general category of domestic relations law; and 4) the resolution by the State trial court is consistent with the law enunciated by the highest court in the State.

474 F.2d at 1373. Given this holding, we must consider the precedental effect of *Gray* on this case.

Of the four prerequisites listed in *Gray* for a state trial court decision to be binding on the federal Government when interpreting a federal statute, three were definitely present in this case. First, the same Social Security statute in *Gray* is being interpreted in this case for the purposes of the Railroad Retirement Act. Second, the Ohio Probate Court case was a contested matter.[2] Third, the issue of whether petitioner is the

---

2. Respondent Board points to a number of decisions in this Court and in other Courts of Appeals that have held that the federal Government is not bound by state trial court decisions made after *ex parte* proceedings. These very decisions were distinguished in *Gray v. Richardson*, 474 F.2d 1370, 1373 (6th Cir. 1973).

We find that the present case is distinguishable from the cases relied upon by the Secretary. In both *Cruz v. Gardner*, 375 F.2d 453 (7th Cir.), cert. denied, 389 U.S. 886, 88 S.Ct. 160, 19 L.Ed.2d 184 (1967), and *Cain v.*

*Secretary of Health, Education and Welfare*, 377 F.2d 55 (4th Cir. 1967), *ex parte* State trial court decisions were involved. Both decisions speak of serious questions as to the consistency of the decision of the trial courts with the law enunciated by the highest State court. Our decisions in *Dowell v. Gardner*, 386 F.2d 809 (6th Cir. 1967), and *Old Kent Bank & Trust Co. v. United States*, 362 F.2d 444 (6th Cir. 1966), also involved *ex parte* trial court decisions.

widow of George Dennis is within the category of domestic relations law.

The only *Gray* criterion that is disputed in this case is whether the Ohio Probate Court's decision is consistent with the law as enunciated by the Supreme Court of Ohio. Respondent Board argues that it is not and thus concludes that the Ohio Probate Court decision is not binding upon the Board. We, however, do not agree. In our view, the decision of the Ohio Probate Court was consistent with the law of Ohio as stated by the Supreme Court of Ohio,[3] as the following examination of Ohio law will demonstrate.

In the present case, both Jewell and petitioner proved that they had married George. In this situation, the Ohio Supreme Court in *Industrial Commission v. Dell*, 104 Ohio St. 389, 401–03, 135 N.E. 669, 673–74 (1922), stated the applicable law.

There is of course a presumption that any marriage which has been solemnized in accordance with the laws of the jurisdiction where the ceremony is performed is valid. There is also a presumption that any marriage which has been properly and legally solemnized, and the status of the parties which has been thereby fixed and determined, shall continue until terminated by death, or by the decree of some court of competent jurisdiction having both parties before it by due process of law. If both of these presumptions could be indulged without either doing any harm to the other, it would be the best solution of the problem, but unfortunately in order for one presumption to be indulged it is necessary in many instances that the other must be violated. It has been said that to indulge the presumption of the continued existence of the former marriage would place upon the second wife the burden of proving a negative, to-wit, that the first wife was not dead, or that she was not divorced. This view entirely loses sight of the fact that to indulge the presumption of the validity of

the second marriage places upon the first wife the burden of proving a negative, to-wit, that no decree of divorce has been awarded.

\* \* \* \* \* \*

. . . It would seem to be a more reasonable doctrine to require the burden of proof to be placed upon the second wife, because it was not possible for the first wife to have followed her recreant husband all over the world in order to prevent another marriage of an unlawful nature, while it was within the power of the second wife to have made inquiry or to have insisted upon some information . . . . . It seems much better to insist that a little ordinary business prudence should enter into a prospective marriage, and that when a woman does not insist upon knowing something about the past life of the prospective bridegroom, it is more reasonable that she should take the consequences of her imprudence than that the consequences should be visited upon a perfectly innocent lawful wife, who had no knowledge and no means of knowledge that the second marriage was about to occur.

This area of law was discussed also by this Court in *Domany v. Otis Elevator Co.*, 369 F.2d 604, 610–11 (6th Cir. 1966), *cert. denied*, 387 U.S. 942, 87 S.Ct. 2073, 18 L.Ed.2d 1327 (1967).

There are two presumptions in law concerning the marital status of individuals. The rule followed in the majority of jurisdictions is that a marriage is presumed to be legal until proven otherwise. A corollary to this is the additional presumption that the first marriage has ended in a legal divorce. Under the minority rule which is followed in Ohio, it is presumed that once a marriage is entered into it continues until proof of dissolution. To complement this presumption, it is further presumed that there was no valid divorce in the first marriage in the absence of positive proof. (Citations omitted.)

---

**3.** Because the issue before us is whether as a matter of law the respondent Board failed to apply properly this Court's precedent in *Gray*

*v. Richardson, supra*, 474 F.2d 1370, the question of the substantial evidence rule is not before us.

A conflict arises between these two presumptions when, as in this case, a spouse of a first marriage enters into a second marriage, while the first spouse is still living, and no evidence is presented as to the dissolution of the first marriage. Under the majority rule, the legality of the subsequent marriage would be presumed, in spite of the fact that a spouse of the former marriage was still living. In Ohio, under the minority rule, it would be presumed that the status of the parties to the first marriage continued and the burden would be upon the parties claiming the validity of the second marriage to overcome the presumption.

*In accord: Evans v. Industrial Commission,* 166 Ohio St. 413, 143 N.E.2d 705 (1957); *Johnson v. Wolford,* 117 Ohio St. 136, 157 N.E. 385 (1927).

It is thus apparent that under the law of Ohio, in the absence of proof of the termination or of the invalidity of the marriage between George and Jewell, that marriage must be presumed to continue to exist. Petitioner could not then have legally married George, and Jewell would have been the widow of George, so the question is whether the marriage between George and Jewell was ever valid.

■ Ohio follows the rule that the validity of a marriage is determined by the law of the place where the marriage contract was entered into. *Mazzolini v. Mazzolini,* 168 Ohio St. 357, 155 N.E.2d 206 (1958); *Basile v. Basile,* 86 Ohio App.2d 535, 93 N.E.2d 564 (1948); *Abbott v. Industrial Commission,* 80 Ohio App.2d 7, 74 N.E.2d 625 (1946). Ohio courts would therefore look to the law of Georgia to determine the validity of the marriage between George and Jewell.

■ The Ohio Probate Court found that George was born in 1906 and thus when he married Jewell was fourteen, which would make George under age and the marriage *void. See Jones v. Jones,* 200 Ga. 571, 37 S.E.2d 711 (1946); *Smith v. Smith,* 84 Ga. 440, 11 S.E. 496 (1890). This portion of the Ohio Probate Court decision is supported by the record and would not have been dis-

turbed on appeal. Respondent Board was therefore not free to ignore that determination of the Ohio Probate Court.

Nor could the Board take the position that the marriage between George and Jewell was ratified after their marriage once George did reach the age of consent and the two continued to live together. *See* 52 Am.Jur.2d, Marriage § 16. Respondent Board assumes that the Ohio Probate Court did not address the issue of ratification, but the Board erred in that assumption. While the Ohio Probate Court did not use the word "ratification," the Court did make findings that would have been irrelevant if the Court were not addressing the issue of ratification. The Ohio Probate Court stated the following:

> After the marriage ceremony with Jewell Dobbs, George Dennis lived in several different cities, finally ending up in Cincinnati with his son and his alleged wife, Jewell. At the time they came to Cincinnati, the son, James, was still a young child and, according to the mother, not yet walking. The other three children of the George Dennis—Jewell Dobbs relationship had died before they came to Cincinnati, one dead at birth and the other two (twins) died within a year of birth. I was unable to determine from the testimony or my own questioning of Jewell as to how many years they lived together. Upon their arrival in Cincinnati George left and went to Detroit, Michigan, and until he was married to Ollie Mills (for some period of time) Jewell did not know of his whereabouts. Jewell Dobbs lived with a man by the name of Brown for a number of years and never lived with George Dennis after he left Cincinnati for Detroit.

These findings which clearly address the ratification question, were made after examination of witnesses, were supported by the record, and would not have been disturbed on appeal. The gist of these findings was that there was no ratification of the alleged marriage between George and Jewell.

Our reading of the Ohio Probate Court decision leads us to conclude that it was "consistent with the law enunciated by the highest court in the State [of Ohio]." *Gray v. Richardson, supra,* 474 F.2d at 1373. Under the authority of the *Gray* case, respondent Board should have accepted the determination by the Ohio Probate Court that petitioner was the widow of George Dennis.

Petitioner is the widow of George Dennis and was living with him when he died, and is therefore entitled to the widow's insurance annuity under § 5 of the Railroad Retirement Act. The decision of the respondent Board is reversed.