DIRION v. BREWER, ADMR., ET AL.

*Husband and wife—Common-law marriage established, when
—Presumption that illicit relationship continues, and bur-
den to prove marriage status—Presumption favoring leg-
itimacy of children—Evidence—Mother's statement that
child legitimate, admissible—Legitimacy established by
proof of marriage before child's birth—Innocence of crime
presumed.*

1. To constitute a common-law marriage there must have been
   an agreement to marry, carried out by living together and
   cohabiting together as man and wife under and by virtue
   of that agreement.
2. Relationship, having been established as illicit, is presumed
   to remain that way so long as cohabitation remains, and
   those who claim that another relation was established
   must show that some time thereafter it was changed
   either by a statutory marriage or by a common-law mar-
   riage under state laws.
3. Common-law marriage is recognized as valid in this state.
4. Law favors legitimacy, and will indulge in all presumptions
   to carry out that presumption and make child legitimate.
5. Men are presumed to be innocent, and not to commit crime.
6. In proceedings to establish plaintiff's legitimacy for pur-
   poses of inheritance, statement of plaintiff's deceased
   mother that plaintiff was legitimate *held* admissible.
7. If parties agreed to live together as husband and wife, and
   followed that by present cohabitation, irrespective of illicit
   relation which may have been starting of their relation-
   ship, it would constitute a common-law marriage.
8. Evidence *held* to show that parties were married prior to
   plaintiff's birth and that she was legitimate, in view of
   Rev. St. 1886, Section 5698 (Act March 11, 1853 [51 Ohio
   Laws, p. 379], Section 6), now Section 11989, General
   Code.

(Decided June 22, 1925.)

[1] Marriage, 38 C. J. § 93; [2] Id., § 103; [3] Id., § 88;
[4] Bastards, 7 C. J. § 5; [5] Evidence, 22 C. J. § 75; [6]
Bastards, 7 C. J. § 12 (Anno.); [7] Marriage, 38 C. J. § 93;
[8] Bastards, 7 C. J. § 15.

APPEAL: Court of Appeals for Cuyahoga county.

*Messrs. Grossman & Grossman,* and *Messrs. Payer, Winch, Minshall & Karch,* for plaintiff.
*Messrs. White, Hammond, Brewer & Curtiss,* for defendants.

VICKERY, J. This cause came into this court on appeal, evidence was introduced on both sides, and the cause was submitted to the court on the record thus made on appeal. The questions involved in this lawsuit are important from more than one point of view and deserve serious consideration. We learn from the record that Henry F. Scheips, prior to the birth of the plaintiff in this case, cohabited with one Carrie Koop, who at the time was a little girl, perhaps not more than 16 years of age, while Scheips was a man of mature years. That the child born of that relationship, the plaintiff in this action, was the child of these two people is unquestioned.

The question before the court is whether Josephine Dirion was born in wedlock, or is an illegitimate child. If she is an illegitimate child, then she is not entitled to inherit from her father. If she is a legitimate child, Henry Scheips dying intestate, she would be his heir at law. It may be that the solution of this question depends upon whether or not there was a common-law marriage between these people, although from the record one may infer that there may have been a statutory marriage.

There are conflicting presumptions in this case which I shall endeavor to analyze and to reconcile.

We start out with the broad proposition that in order to constitute a common-law marriage there must have been, at some time, an agreement to marry, carried out by living together and cohabiting together as man and wife under and by virtue of that agreement. I think one might fairly deduce from the record in this case that when the relationship between this father and mother of the girl started it was an illicit relation, not to the commendation of the father, because he was a man of mature years and the mother of this girl was only a little girl. He could have been and perhaps should have been prosecuted for a crime under the Ohio statutes, but, however that may be, I think the authorities well establish the doctrine that, a relationship having been established as illicit, the presumption is that it remains illicit so long as the cohabitation remains, and it is incumbent on those who claim that another relation was established to show that some time thereafter this relationship was changed, either by a statutory marriage or by an agreement which would amount to a common-law marriage under the laws of Ohio, because I think that the courts of Ohio have recognized a common-law marriage as a valid marriage. In fact, in the case of *State* v. *Schwartz,* 13 C. C., 62, 7 C. D., 43, that went up from this county, a man was convicted of bigamy where the first marriage was a common-law marriage, and that conviction was sustained by the Supreme Court, *State* v. *Swartz,* 35 W. L. Bull., 358. There are other cases cited in the briefs of both parties, and I shall not take the trouble of citing them again.

Having in mind that the law recognizes a common-law marriage, because I shall first address myself to the theory that the right of the plaintiff to recover depended on a common-law marriage, you must always bear in mind that beyond question the plaintiff is the child of the decedent and is more entitled to the estate of her father than any of the people who claim it. She not only is entitled to the estate of her father, but is entitled to more than that. She is entitled to reparation for the wrong that the administrator of her father's estate would seek to entail on her by bastardizing her and making her an illegitimate child; yet we must also bear in mind that the relation, as I have already alluded to it, started out by being illicit. Now is there anything in the record which would show that that relationship changed? One of the presumptions to which I have referred is that the law favors legitimacy, and will indulge in all presumptions to carry out that presumption and make the child legitimate.

The defendants in this case rely largely upon the case of *Bates* v. *State,* decided by the circuit court of the old Third circuit, now the Court of Appeals of the Third appellate district of this state, reported in 9 C. C. (N. S.), 273, 19 C. D., 189, the syllabus of which reads:

"Cohabitation and acknowledgment of the marriage relation by a man and woman, but without statutory marriage, do not, in Ohio, constitute a valid marriage on which an indictment for bigamy can be founded."

Now it must be remembered that this was a criminal case, and here another presumption must

be disposed of, and that presumption is that men are presumed to be innocent and do not commit crimes; in other words, every presumption is in favor of a man's innocence, and the evidence to overcome that presumption must be beyond a reasonable doubt, and so the court might well hold that the common-law marriage was not established with such clear and convincing proof as would be in accordance with the rules of criminal evidence, that is established to a degree to convince beyond a reasonable doubt, while in a civil case, especially involving the legitimacy of a child, the presumption of the legitimacy of the child and of the marriage would be the other way. This must be borne in mind in an analysis of that case, because this case in the Third circuit apparently was decided by judges who did not favor the establishment of a marriage by common law and followed the opinion in the case of *Queen* v. *Millis,* 10 Clark and Finnelly's Rep., 534, 8 Eng. R. Reprint, 844. It must be noted that this case, so far as Ohio is concerned, was overruled, or rather the decision was the other way in *Carmichael* v. *State,* 12 Ohio St., 553, which appeared to be a case parallel with *Queen* v. *Millis,* and was decided the other way, fully recognizing a common-law marriage. I refer to this court's opinion at length because it is the strongest case that was presented to us and was relied upon almost entirely by the defendants in the argument to this court.

It would be well to look at the statute. The old Revised Statutes (Section 5698 [Section 11989, General Code; 51 Ohio Laws, p. 379, Section 6]), provides:

"Proof of cohabitation, and reputation of the marriage of the parties, shall be competent testimony to prove such marriage, and may be, within the discretion of the court, sufficient evidence thereof."

In commenting upon that statute, the learned judge in the Third circuit court held that it applied to divorce matters only. I presume he meant that it did not apply to criminal matters, but if that statute makes proof of cohabitation and reputation sufficient to establish a marriage that may be dissolved, with much more reason should that rule apply when it comes to a question of making legitimate or bastardizing an innocent product of such relationship.

Now there is evidence in this record that the defendant's decedent and the mother of the plaintiff were recognized as man and wife. Their reputation was that of man and wife. The decedent recognized this girl as his own, and even boasted of the fact that he had a little girl, and he bought a baby carriage for her, and, I believe, even drank to the health and prosperity of his little girl with his cronies in the saloon. There are many people who testified as to this woman being known as his wife, and introduced as his wife, and so there is evidence of reputation which would come under the statute, and if that statute applies to cases like this I see no reason why the court could not adopt that evidence and base judgment on that alone, for cohabitation is important.

Now I have already alluded to the fact that this relationship started out by being illicit and that therefore the presumption would be that it con-

tinued to be illicit, and it is incumbent on the plaintiff to show, by evidence, that the illicit relations were terminated and that of a marital relation took its place. Is there any evidence of that? I think there is. The aunt of this girl, the oldest sister of this plaintiff's mother, was somewhat chagrined at the relationship that had been established between this much older man and her young girl sister. She upbraided him about it and he promised the sister then that he would undo the wrong that he had done and would marry her sister. Subsequently he stated again to the sister, in unmistakable language, that he had carried out his agreement. To use his own language:

"Didn't I do as I agreed when I said I would marry your sister?"

The inference from that is unmistakenly that he married her sister.

We are not left alone to conjecture or to the statement made by decedent to the sister. We have the evidence of the girl's mother, which the lower court ruled out, but which we think is competent, being an exception to the hearsay rule, as it is the statement of a deceased ancestor relating to the birth of a child. Before she died she was cognizant of what might be said about her daughter, and she in effect said this:

"Don't let them tell Josephine that she is illegitimate because I say to you that we were married before Josephine was born."

This, if true, establishes that Josephine was born in lawful wedlock. And there is not any evidence in this record that disputes that proposition or the proposition that the father made to

the aunt of this girl that he would and had married her.

Now they say that that referred to a statutory marriage, and they have not proved that there was a statutory marriage. Perhaps it referred to a statutory marriage and perhaps it did not. I think, then, under the authorities, that if the father and mother of this girl had agreed to live together as husband and wife and followed that by present cohabitation, irrespective of the illicit relation which may have been the starting of their relationship, it would comply with the rules and the law in order to make a common-law marriage. But why say there was not a statutory marriage at that time? I do not know whether the same is true now or not, but, at the time this occurred, in New York state they did not need any banns; they did not need any license; and these people could have gone on the boat and gone to Buffalo and gone before any preacher or officer and could have been married under the law of New York, and undoubtedly there were many other places where they did not have to procure a license, and to bastardize this girl who is going to indulge in a presumption that such a procedure was not followed?

We think the evidence is clear and convincing, by the words of both parties who knew best the entire transaction, that they were married prior to the birth of this child and that the child was born in lawful wedlock. That might have been by a common-law marriage, or it may have been by a statutory marriage, so far as this record shows. Now remember it is conceded that this little girl is the child of these two dead people. It is con-

ceded that she is the natural beneficiary of the estate of her father. Let it be remembered that the law favors and will indulge every presumption in favor of the legitimacy of the child and frown down upon presumptions which make the child a bastard. Then in the face of this record some witnesses testified that they did not think that these people were married. They may be perfectly truthful, and the testimony may be applied to the earlier relationship, which I think the record shows started in an illicit manner, but I think the record just as plainly shows that there were some efforts at correction made, which from the words of both parties were successful, and that these people married so as to make the offspring legitimate.

I will not go through and cite the authorities, but I think there is an abundance of authority to sustain the position the court takes in this case.

We think, therefore, from the record in this case, that at some time before the birth of the plaintiff her father and mother were married and that she therefore was a legitimate child, and is entitled to inherit from her father.

A decree of the court may be drawn in accordance with these views.

*Decree accordingly.*

LEVINE, P. J., and SULLIVAN, J., concur.