Judgment as to attorney fees will therefore be modified so as to allow attorneys for plaintiff $267.50 and 10 per cent. of weekly payments accruing and paid after March 20, 1927.

*Judgment modified and affirmed as modified.*

RICHARDS and LLOYD, JJ., concur.

---

## LUMAS v. LUMAS.

*Divorce and alimony—Common law marriage not established by evidence—Presumption that illicit cohabitation continued—Express or implied contract and cohabitation necessary to constitute common-law marriage.*

1. Where parties lived together in illicit relationship before plaintiff procured divorce from her husband, it is presumed that their living together thereafter continued to be illicit, and such cohabitation shows no relation on which a common-law marriage contract may be predicated, especially in view of evidence showing their dealings with their individual property as though they were unmarried.

2. To constitute a "common-law marriage" there must at some time have been an agreement, either express or implied, that parties would live together as husband and wife, which agreement must be followed by cohabitation.

(Decided October 24, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Gordon & Gordon,* for plaintiff in error.
*Mr. Joseph H. Mellen,* for defendant in error.

VICKERY, J. This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county.

In the court below defendant in error, Julia Lumas, was plaintiff, and brought an action for divorce and alimony against the plaintiff in error, Mike George Lumas, defendant below. There is a record of some 500 pages in this case. At the conclusion of a week's hearing, or more, the court found for the plaintiff, entered a decree of divorce from the defendant, allowed her the sum of $2,000 alimony, and did not release her dower interests in the property owned by the defendant.

The record presents a singular state of facts, and how the court could find under the testimony of this case that there had been a marriage of any kind between these parties is difficult to understand. It seems that the plaintiff was married to one Benjamin Zubow in Russia, and came to this country and lived somewhere in Massachusetts; that while she was living with her husband the defendant and she became criminally intimate, and that this intimacy existed for some period of time, when either Zubow or she procured a divorce. She then proposed to plaintiff in error that he marry her. He declined and left Massachusetts and went to Connecticut. She then married a man by the name of Anton Kalenouskis and lived with him some time, when the illicit relations between herself and the plaintiff in error were again taken up and continued for some period of time. She followed plaintiff in error to Bridgeport, Conn., and they lived there together for a while. Subsequently he left her and moved to Akron. She then followed him to Akron,

and finally established a residence of her own in Cleveland.

It seems that subsequent to this removal of plaintiff in error to Akron, he came to Cleveland and became a boarder in the home of defendant in error. It seems that she had two children by the first marriage with Zubow. In the year 1921 she brought proceedings in divorce against Anton Kalenouskis in the courts of Cuyahoga county, and on the 22d day of January, 1922, she was granted a divorce and restored to her former name of Zubow. It seems as though relations of some kind existed between plaintiff and defendant in Cleveland. The record is not quite clear what the relations were; he claiming that he was a boarder in the house, and she claiming he was paying the rent for the house. The record, however, shows that she rented the house, and that it was her home. Subsequently this action was brought for alimony and divorce, basing her right to recover upon what she calls a common-law marriage. She alleges that this marriage took place on January 1, 1922, and there is nothing in the pleadings to show that it was amended. It must be remembered that the divorce from Anton Kalenouskis was not granted to this woman until the 22d day of January, 1922, and so she was ineligible to contract a marriage on January 1, 1922. The court, however, found that the marriage took place some time between January 22 and July 1, and, as I say, granted a divorce and alimony against this man.

In the case of *Dirion* v. *Brewer, Admr.*, 20 Ohio App., 298, 151 N. E., 818, this court has sustained a common-law marriage, but the circumstances of that case are entirely different from those pre-

sented in the instant case. In that case the Supreme Court on October 27, 1925, overruled a motion to certify the record, so the law laid down in that case, in so far as we know, is the law of the state of Ohio. That case has not been cited to us. Apparently neither side knew about it, and yet the whole theory of the common-law marriage is analyzed in that case. In that case the principle laid down is that where the relation between a man and woman started in an illicit relation, the presumption is that it continued to be an illicit relation, and, while it was possible for a common-law marriage to afterwards be contracted, even though the relation commenced as illicit, the evidence of such a contract must be clear and convincing to overcome the presumption of the illicit relations continuing. That was the salient point in the *Dirion case,* but that case must be distinguished from this case, in that in the *Dirion case* it was the legitimacy of a child that was involved, and the presumption for legitimacy is always preferred, and the evidence in that case, although the relation started as illicit, of the changing of those relations to a common-law marriage was clear and convincing, and upon that evidence this court held that Josephine Dirion was legitimate and was entitled to inherit her father's estate. That case, I say, was affirmed by the Supreme Court refusing to certify the record.

Now, starting out with the proposition in the instant case that this relation at the beginning, and for a great many years, at different intervals, was illicit, and was illicit down to at least the 22d day of January, 1922, what is there in this record to change that relation? The man testified that he never lived with this woman as her husband under

an agreement or understanding, either express or implied, from which the marriage relation would result. True, this woman's grown children coming home on one occasion found this man and their mother living together, and he asked, "How do you like your new father?" Then there were one or two other instances in which he may have introduced this woman as his wife in some organization to which they both belonged, and there is evidence of certain people, who knew them, to the effect that they lived together. There is nothing in this record which would show an implied contract whereby these people became husband and wife.

In order to constitute a common-law marriage there must at some time have been an agreement, either express or implied, that these people would live together as husband and wife, and that must be followed by cohabitation. There are two elements, then, that must appear; namely, first, the promise to live together as husband and wife, and, second, the cohabitation, which must follow. Neither one nor the other would be sufficient, but both must exist.

There is just as much evidence that these people were known in the neighborhood as not being husband and wife as that they were known as husband and wife. There is no doubt they went out as husband and wife, but, on the contrary, there are dealings of this woman after this so-called marriage took place where she conveyed title to real estate in which she signed the deed as a single woman, and used the name of her first husband to which she was restored after she was divorced from her second husband. Plaintiff in error also deeded property as a single man with the apparent knowl-

edge and consent of this woman. Now in the face of all this, the rights of other people would be seriously affected if the doctrine of the common-law marriage should be permitted to prevail, making these persons man and wife.

We think this whole record shows that the relation between these persons started illicitly and continued to be illicit and was illicit down to the time when this suit was brought, and there is nothing in this record from which a common-law marriage contract could be predicated.

We think, therefore, that the judgment of the court in decreeing a divorce for this woman, and in allowing her alimony, is clearly against the law, and it will therefore be reversed and judgment entered for defendant below.

*Judgment reversed and judgment for plaintiff in error.*

SULLIVAN, P. J., and LEVINE, J., concur.