RYAN, APPELLEE, v. RYAN ET AL., APPELLANTS.

(No. 2298—Decided June 9, 1948.)

Mr. *Edward S. Sheck*, Mr. *E. D. Fritch*, Mr. *Willard Thomas*, Mr. *Martin Hunker* and Mr. *Robert Sheck*, for appellee.

Messrs. *Amerman, Mills, Mills, Jones & Mansfield*, Mr. *Harry Mencher* and Mr. *Carl Dorn*, for appellants.

MONTGOMERY, J. This action was instituted in the Probate Court of Stark county by the filing of a pe-

tition by the plaintiff, appellee herein, in which she averred that she was the surviving spouse of Harry R. Ryan, deceased, who died intestate on or about February 8, 1947. The prayer of the petition was that the court determine who are the heirs of the decedent, entitled by law to inherit his estate. Issues having been made, the cause was tried in the Probate Court, which found on behalf of the plaintiff that she had proved by clear and convincing evidence that she is the widow and sole heir of Harry R. Ryan, deceased. From that judgment this appeal was perfected, and as an appeal on questions of law it was submitted to this court.

The assignments of error are that the judgment of the Probate Court is contrary to law; that it is against the weight of the evidence and not sustained by any evidence; that the court erred in the exclusion of evidence offered by the defendants, appellants herein; and that the court was prejudiced against the defendants. There is another alleged error urged strenuously, but not formally assigned as such, in that in one respect the court admitted certain evidence which should have been excluded. The admissibility of these two items of evidence will be discussed in the course of this opinion in connection with the issues, or alleged issues, to which they are directed.

As to the last assignment of error, to wit, the alleged prejudice upon the part of the Probate Court, suffice it to say that we find no basis for any such contention. We marvel at the patience of the trial judge and the leniency shown by him in the permission accorded the parties to introduce incompetent evidence, and upon his submitting to the continued repetition of questions and to endless arguments and bickerings upon the part of counsel.

We have read with care the very extended briefs submitted on both sides, and we have read this unnecessarily long and exceedingly nauseating record submitted to us. We say "nauseating" advisedly. The record shows that this decedent, following his death, was found to have been possessed of approximately $200,000, accumulated, so far as the record discloses, by his operation, either as owner or lessor, of a series of houses of prostitution. The plaintiff, who claims to have been his common-law wife, is shown to have been at times operating one of these houses; to have committed adultery with other men and, while she lived with the decedent, to have alternated with him in the use of his bedroom with another woman known as Thelma Hostetter or Thelma Maurer, who was, and is, a confessed prostitute and the operator of one of his houses. She was from time to time his acknowledged paramour, both in Canton and on numerous trips which they took to other cities and states. But, in passing, it might be observed that the defendants can make no claim of special virtue when discussing the decedent or his alleged common-law wife or this other woman. There is evidence in the record that the decedent and this woman on various trips took with them his Uncle Thomas Ryan, known familiarly as "Uncle Tom," and a star witness for the defendants. On one of their trips through the south this decedent and this woman took with them one of the defendants, the decedent's sister, and with them her young daughter. On another of the trips of these two people, made to New York city, they stayed with his sister, a defendant herein, who resides in New York. One of the defendants, a half brother of the decedent, is shown to be a gambler and the husband of a woman who operates another house of prostitution.

As we view it, these things are of no importance in deciding the real issue, but they are mentioned in view of the very strenuous claims made by the defendants as to the character of the decedent and the character of the plaintiff and the actual relationship between them.

The trial court in the course of his opinion made this pronouncement, with which we are in complete accord:

"The sole question to be determined by this court is: Who is or are the heirs at law of Harry Ryan, deceased?

"The business, character, citizenship, or criminal record of any of these alleged heirs at law is not involved or considered by the court in deciding the issue in this cause.

"The amount of or the method by which the estate of Harry Ryan was procured is not important nor considered by the court in deciding the issue in this cause. If Rose Ryan was the wife of Harry Ryan at the time of his death she is his sole heir. If she was not, his brothers and sisters are his heirs at law."

The undisputed facts are that this plaintiff was, in the year 1918, duly married to one Carl Keeler, and there is nothing in the record to indicate that they ever were divorced. He died in 1940. The plaintiff and the decedent went through a ceremonial marriage in 1924 and lived together as man and wife thereafter until his death in 1947, except for certain periods of time when they were separated and temporarily cohabiting with other people. So far as the record is concerned we have no difficulty in finding that the marriage ceremony in 1924 was invalid. But we likewise have no difficulty in finding that these two people were living together as husband and wife, and, except for the existence of an undivorced husband, all the neces-

sary elements were combined to support the contention that she was his common-law wife. After the death of the first husband in 1940, all the elements necessary to establish a common-law marriage existed. Moreover, there is in evidence the statement of a Canton attorney to the effect that shortly before Ryan's death these parties openly acknowledged that they were husband and wife and took each other as such.

We find, as did the trial court, by clear and convincing evidence that this woman was the common-law wife of Harry R. Ryan, and, consequently, his sole heir at law.

Because of the amount involved and the questions raised and the conflicting authorities upon this proposition, we deem it important to go at some length into these authorities. We have given some consideration to the numerous authorities cited from other states and from text books, but we do not deem them important. We think the law upon this proposition is correctly stated in the first paragraph of the syllabus in the case of *Howard* v. *Cent. Natl. Bank of Marietta*, 21 Ohio App., 74, 152 N. E., 784, which is:

"Existence of common-law marriage is to be determined by law of state where it was consummated."

Counsel for defendants insist, and repeat in brief their insistence, that they are protected by the doctrine laid down in the cases of *In re Estate of Redman*, 135 Ohio St., 554, 21 N. E. (2d), 659, and *Lumas* v. *Lumas*, 26 Ohio App., 502, 160 N. E., 480.

As to the *Redman case*, several things are to be observed. When the relationship between these parties was assumed, as stated by the court in the opinion at page 559, "their action was no more than the most casual beginning of a state of fornication. There is complete failure of proof of an agreement *in praesenti* to enter into the relationship of husband and wife."

Furthermore, the principle announced in the *Redman case* was explained and broadened by the later decision of the Supreme Court in the case of *Markley v. Hudson,* 143 Ohio St., 163, 54 N. E. (2d), 304. So that in our judgment the *Redman case* is no longer of any value. We pointed out the distinction between the cases, as we understand it, in our opinion in the case of *Abbott v. Industrial Commission,* 80 Ohio App., 7, 74 N. E. (2d), 625. And the *Lumas case* is based upon a state of facts somewhat similar to that in the *Redman case.*

These situations are altogether different from the situation existing in the instant case. But even these propositions are qualified in the case of *Dirion v. Brewer, Admr.,* 20 Ohio App., 298, 151 N. E., 818, when in the seventh paragraph of the syllabus it is stated:

"If parties agreed to live together as husband and wife, and followed that by present cohabitation, irrespective of illicit relation which may have been starting of their relationship, it would constitute a common-law marriage."

Counsel for defendants with some satisfaction referred to an opinion of the Probate Court of Tuscarawas county in the case of *In re Estate of Goettge,* 32 Ohio Law Abs., 620, 19 O. O., 138, 6 Ohio Supp., 89. The judgment in the case was affirmed without opinion by this Court of Appeals, and the second and third paragraphs of the syllabus in the *Goettge case* are urged as the law in this Appellate District. Suffice it to say that the affirmance of that judgment of the Probate Court means nothing more than that we regarded it as right under the facts in that case. And, as stated by the Supreme Court in the course of the opinion in the case of *Johnson v. Wolford,* 117 Ohio St., 136, 141, 157 N. E., 385, all common-law marriage

cases are decided upon the peculiar facts of those cases. The published syllabus of an opinion of an inferior court is not the law, except as based upon the facts in the given case. As is well known, the syllabi of cases in these unofficial reports are frequently not written by the judges rendering the opinions, but are written by staff members of the publishing house. An affirmance by a reviewing court of a judgment of a lower court does not mean the adoption of a published syllabus.

We have in Ohio a section of the General Code, to wit: 11989, which is in this language:

"Proof of cohabitation, and reputation of the marriage of the parties, is competent evidence to prove such marriage, and within the discretion of the court, may be sufficient therefor."

And we may with propriety refer to the old case of *Bruner* v. *Briggs,* 39 Ohio St., 478, which was the law as understood in Ohio for many years, and still is the law except as it may have been qualified by the *Redman case, supra,* which in turn was qualified by the *Markley case, supra.*

This *Markley case* being the latest pronouncement of the Supreme Court upon this subject is entitled to more weight than any other case submitted, because, as we view it, it extends and clarifies the law as previously understood, and, in our judgment, the decedent and the plaintiff brought themselves clearly within the rule prescribed in this *Markley case.* The second paragraph of the syllabus in that case is:

"While such agreement to marry *in praesenti* must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside."

The Probate Court relied to a very great extent,

and we think with propriety, upon the case of *Johnson* v. *Wolford, supra,* where a situation very similar to the instant one existed, and the syllabus of which case is:

"Where F., innocently and in good faith enters into a ceremonial marriage with J., which is void when contracted because J. has at the time a valid and subsisting contract of marriage with M., the removal of the impediment to such marriage by the death of M., and the continued cohabitation between F. and J., after the death of M., operate as a ratification and a validation of such marriage as to F. from the date of the death of M., though the death of M. may not have been known to F. and J.; the intent and actual agreement to be married which inhered in the ceremonial marriage innocently contracted by F. will be imputed by the law to the cohabitation after the death of M. so as to establish a valid marriage at common law."

It is to be noted, answering the contention of defendants that this inures only to the benefit of the so-called innocent party, that the syllabus and the opinion do not so hold, but they do hold that after the death of the first lawful husband the relationship between the parties concerned was such, "as to establish a valid marriage at common law."

In this connection we choose to discuss the error alleged in argument, to wit, that the trial court erred in admitting proof of conversations had in 1922 or 1923 between the first husband of the plaintiff and her father, mother and sister to the effect that this husband had stated to these other people that he had been divorced from Rose. The record shows that this information was transmitted to the plaintiff prior to her ceremonial marriage with Ryan. We hold this evidence to have been competent as showing the good faith of the plaintiff when she entered into the cere-

monial marriage and began her relationship with Ryan.

The excluded evidence to which exception is taken is that of a certified copy of a record from the state of Arkansas with reference to alleged relationship maintained for a time in Hot Springs between Rose Ryan and a man by the name of Azar. This was offered in connection with the testimony of this same "Uncle Tom," who seems to have appeared conveniently on many strange occasions. We hold this evidence to have been incompetent. As in fact all the other evidence with reference to these extra-marital relations between the decedent and his paramour Thelma, or between the plaintiff and any man other than the decedent were incompetent.

We think that on this proposition the law is correctly stated in the eighth paragraph of the syllabus in the case of *Howard* v. *Cent. Natl. Bank of Marietta, supra,* wherein it is held:

"Effect of proof of common-law marriage is not destroyed by the man's later adulterous career with another woman."

Finally, we are favored with the submission to us of an opinion rendered by the Court of Appeals of Summit county on May 11, 1948, in the case of *Hale, Exrx.,* v. *Graham.* Of course this opinion is unofficial, not yet having been published, but presumably will be published officially, and, in any event, the opinion submitted shows a state of facts very similar to the facts in the instant case and shows the conclusion of the court to be the same conclusion which we reach in the instant case.

The judgment of the Probate Court is affirmed.

*Judgment affirmed.*

Putnam, P. J., and McClintock, J., concur.