DIBBLE, APPELLANT, *v.* DIBBLE, ADMX., ET AL., APPELLEES.

(No. 664—Decided January 23, 1950.)

*Messrs. Spieth, Spring & Bell* and *Messrs. Beam & Beam,* for appellant.

*Messrs. Anderson, Will & O'Donnell,* for appellee Jewell G. Dibble.

Putnam, J. This is an appeal on questions of law from the Probate Court of Richland County. The action in that court was instituted by the plaintiff-appellant, Inez F. Dibble, to determine heirship in the settlement of the estate of Herbert L. Dibble, deceased, who died testate March 31, 1948, and whose will was admitted to probate in that court. The plaintiff claims to be the widow and surviving spouse of the decedent. The defendant Jewell G. Dibble also claims to be the widow and surviving spouse of the decedent. She, being named as wife in the will, was appointed administratrix with the will annexed and as such was also made a defendant. The other three defendants, Eunice Dibble O'Neil, Elaine Dibble Williams and Elvira Dibble Baker, filed a joint answer admitting the allegations of the petition.

The essential facts pleaded therein are that the plaintiff, Inez F. Dibble, and decedent Herbert L. Dibble were married June 15, 1909, and were still married at the time of decedent's death; that Eunice Dibble O'Neil, Elaine Dibble Williams and Elvira Dibble Baker are the children of Inez and Herbert Dibble as a result of such marriage; and that the plaintiff was the widow and surviving spouse of Herbert L. Dibble.

The separate answer of Jewell G. Dibble, after admitting that Herbert L. Dibble died testate, that his will had been admitted to probate and made no provisions for plaintiff, Inez Dibble, and that Jewell G.

Dibble was the duly appointed, qualified and acting administratrix with the will annexed, denied all the other allegations of the petition. She further answered and averred, in substance, that she and the deceased were married in a legal ceremonial marriage in Richland county, on January 6, 1948, and thereafter cohabited together as man and wife until his death March 31, 1948.

The ultimate question presented, the answer to which is decisive of who was the widow and surviving spouse of the decedent, is whether plaintiff and decedent were ever legally married, either ceremonially or at common law. It may also be noted here that under the allegations of the petition and the denials in the answer of Jewell G. Dibble, an issue of fact was presented as to whether the three defendants, Eunice, Elaine and Elvira, were the children of the plaintiff and decedent as a result of their marriage.

The case was tried to the court who found for the defendant Jewell G. Dibble and adjudged her to be the widow and surviving spouse of the decedent. The court made a separate finding of facts and conclusions of law upon which an opinion was based. In this appeal on questions of law the following assignments of error are made:

1. The court erred in refusing to permit plaintiff to testify.

2. The court erred in its findings of fact.

3. The court erred in its conclusions of law.

4. The finding of the court and the judgment thereon in favor of the defendant Jewell G. Dibble is contrary to law, and the court should have found that the plaintiff, and not such defendant, is the widow and surviving spouse of the decedent.

5. The finding and judgment of the court is manifestly against the weight of the evidence.

6. The court erred in overruling the plaintiff's motion for a new trial.

7. The court erred in failing to enter a final judgment in favor of the plaintiff.

The record shows that the evidence in this case is undisputed, leaving only questions of law for decision. The plaintiff offered herself as a witness, but the court, upon objection of Jewell G. Dibble, personally and as administratrix, ruled that she was incompetent to testify by reason of the inhibitions of Section 11495, General Code. Thereupon her testimony was proffered for the record in detail and at length as to the circumstances of her marriage with the decedent. This action is the basis of the first assignment of error and it seems logical to consider it now. No other evidence encompassed by the proffered testimony was produced as to a ceremonial marriage, it being claimed by counsel that none was available.

The case of *Brawley* v. *Thomas, Admr.*, 82 Ohio App., 400, 81 N. E. (2d), 719, cited by appellee Jewell G. Dibble, is in direct point. The syllabus of that case is as follows:

"1. In a proceeding for determination of heirship (Section 10509-95 *et seq.*, General Code), the petitioner is not entitled to a jury trial.

"2. In such a proceeding, where the petitioner claims to be the common-law wife of the decedent and the adverse parties defend as heirs and administrator of the estate of decedent, the petitioner is incompetent to testify, over objection, as to facts tending to establish the alleged common-law marriage."

The facts are similar. A motion to certify the record of that case to the Supreme Court was made and overruled. Appellant contends that decision is wrong under the rule of necessity and by virtue of the pronouncements of the Supreme Court in the case of

*Smith* v. *Barrick,* 151 Ohio St., 201, 85 N. E. (2d), 101. We are not persuaded that the latter case is in direct point.

In the case of *Markley* v. *Hudson,* 143 Ohio St., 163, 54 N. E. (2d), 304, the court at page 169 used this language: "Unfortunately, neither of the parties concerned was able to testify, the voice of William T. Markley having been stilled in death and that of Mrs. Markley through mental incompetency."

Possibly a fair inference from this language would be that if Mrs. Markley had not been mentally incompetent she could have testified. However, that question was neither raised nor directly determined by the court.

In view of the fact that that question was directly raised and decided in the *Brawley case, supra,* which case the Supreme Court refused to admit, and since the facts in that case are very similiar to the facts in the instant case, upon the reasoning contained in that case we are constrained to hold that the plaintiff's testimony as to the alleged marriage was not competent, and that the trial court did not err in so determining.

Thereafter the plaintiff produced four witnesses, the three daughters of herself and decedent, and one Gladys Baker, together with numerous exhibits. No objection was made to the testimony of the daughters. From this evidence the following undisputed facts are shown.

The three daughters were all born to plaintiff and decedent while they were living as husband and wife in Chicago, Illinois. Eunice was born on May 3, 1911; Elaine on February 8, 1915, and Elvira on July 25, 1916. The family moved to Clyde, Ohio, in September 1916, where decedent took a position as plant superintendent of the Universal Paper Products Company.

Eunice, who was five years old when the move was made, remembers some but not much of Chicago. She remembered her mother getting her at kindergarden, and the place where they lived, a flat over a store. The other girls had no recollection of Chicago. From the earliest recollection of all of the girls their parents were referred to by them as "daddy" and "mother."

When the family moved to Clyde, Ohio, a village of 3,500 people, they came as man and wife, lived together there as such, and were known and reputed as such during the entire time of their residence there, viz., until 1921, a period of five years. All the girls remember their residence in Clyde although Elvira's memory thereof is less pronounced. They knew about the household, who composed it, daddy and mother and the sisters, and that they were known in that village as man and wife and one family.

In 1918, the witness, Gladys Baker, obtained a position in the office of the Universal Paper Products Company where decedent was plant superintendent, and knew him well until his death—in fact they became business associates later. Her testimony is positive and to the same effect, viz., that plaintiff and the decedent were known as man and wife in the community; that they were referred to as a family and as such introduced to others; that decedent always referred to plaintiff as his wife and the mother of the children and to the children as his children.

In 1921 the Universal Paper Products Company was purchased by another firm and decedent was transferred to Middletown, Ohio, a city of 40,000 population. Here he remained until 1925 as manager of its carton paper plant. He moved his family there. Gladys Baker was transferred there at the same time and worked for the same company. In fact for one and one half years she roomed at the

Dibble home, sharing a room part of the time with one of the daughters. Here again the testimony of all witnesses is that plaintiff and decedent lived as man and wife, were known, introduced and reputed as such; that the daughters were known as such and they so regarded the family relationship; and that decedent always referred to plaintiff as his wife.

On August 7, 1923, decedent entered into a contract for the purchase of real estate in Middletown, presumably a home, for some $12,000, with reference to which plaintiff was described as his wife.

In 1925 the decedent quit his job and went to Kalamazoo, Michigan, where he took a position as superintendent of the carton plant of the Standard Paper Products Company. The plaintiff and children remained in Middletown for a while and then moved to Jackson, Michigan. Here the plaintiff continued to live and make a home until the present time. The three daughters were with her, Eunice and Elaine until they were married and Elvira until she went to her father at Shelby in 1934. Elvira continued to stay with him until 1948, with the exception of 31 months he served in the armed forces during World War II.

About 1926 decedent went to Shelby, Ohio, in Richland county, and organized the Carton Service Company, of which he was president and continued to operate until his death. Gladys Baker went to work for this company, first as stenographer and shortly thereafter as secretary of the company. When Elvira came to Shelby, she went to work for the company and lived with her father at various hotels, and later in a home which he established there.

Decedent continued to support the family at Jackson, Michigan, at least until all the girls were through school and possibly until Eunice was married in 1930

and Elaine in 1939. He made frequent trips to Jackson to see the family. Elvira testified such trips occurred about once a month. Eunice testified they were made three or four times a year and always at Christmas. He was present at Elaine's marriage. Plaintiff was known in Jackson as Mrs. Dibble, the wife of the decedent, and the girls were known as their children. To others he referred to plaintiff as his wife. From 1926 to January 1, 1948, decedent was known in Shelby as a married man, the husband of plaintiff who lived in Jackson, Michigan, and as Elvira's father.

In 1921, while living at Clyde, Ohio, the decedent took out a life insurance policy for $10,000 with The Bankers Life Company and made Inez Dibble the beneficiary. (Plaintiff's Exhibit 1.) The application was signed by the decedent and plaintiff was described both in the application and contract as his wife. The policy, however, was not in effect at the time of his death.

Plaintiff's exhibits 3 to 10 inclusive are photographs of various family groups. Some of decedent and plaintiff, others of them and their children together. One, No. 3, is a large family group of decedent, plaintiff, their three children, decedent's two brothers, their wives and children, and decedent's father and mother. These photographs are all convincing as indicating a family relationship known and recognized and worthy of preservation for the future. Elaine testified that all members of the family group in exhibit 3 always referred to plaintiff as the wife of the decedent.

Elaine occasionally visited her father and sister at Shelby, Ohio, and late in 1947 she first met the defendant Jewell Ford Dibble at her father's home in Shelby. Eunice also met Jewell at her father's home in Shelby in October, 1947, when she went to see her

father who was ill. On December 30, 1947, Eunice and Elaine met their father at the Willard Hotel in Toledo, at which time he told them that he was going to marry defendant Jewell Ford. Eunice said she criticized her father for his intention, but in any event Jewell Ford was called at Mansfield, Ohio, and both girls talked to her and congratulated her. The next day Elaine told her mother, who was then making her home with Elaine at Jackson, what decedent was intending to do. Thereafter Elaine wrote Jewell Ford Dibble two letters, one before and one after her father's death, both friendly.

On December 29, 1947, the decedent and Jewell Ford presented themselves at the Probate Court in Mansfield, Ohio, where they made application for, and received a marriage license. In this sworn application decedent described himself as 58 years of age; stated that he was once previously married; that he had a wife living and that he was divorced. Jewell G. Ford is described as 33 years of age, twice previously married, and a divorced woman.

Plaintiff produced evidence to show that decedent had never secured a divorce in Richland county, Ohio. At the time of filing her petition to determine heirship, plaintiff also made an election to take under the law and not under the will.

The evidence for the defense consisted of detailed proof showing a ceremonial marriage of Herbert L. Dibble to Jewell Ford in accordance with the Ohio statutes, viz., the license, the marriage by a licensed minister, the witnesses thereto, the return thereof, and the certificate. The letters from Elaine to Jewell Ford Dibble were also placed in the record. On January 6, 1948, the day of the ceremonial marriage, decedent executed his will, leaving 25 shares of stock in his company to each of his daughters, naming them,

and the balance of the estate to his wife, Jewell, naming her as such. This will, the application for probate thereof, and the journal entry of its admission to probate are defendant's exhibits.

The defendant, Jewell G. Dibble, signed the application for probate and therein stated that she was the widow and surviving spouse of the decedent and that Elvira E. Baker, Eunice O'Neil and Elaine Williams were the daughters of the decedent and the persons who would be entitled to inherit from the decedent under the statutes of descent and distribution if decedent had died intestate. Defendant's exhibit 11 is a mortgage given by the decedent to the Shelby Plate Glass Company in 1942, in which he described himself as a single man.

The foregoing constitutes the evidence of record. From this the trial court made the following findings of fact and conclusions of law:

"Findings of fact.

"1. Herbert L. Dibble died, testate, in Richland county, Ohio, on March 31, 1948, seized of real and personal property.

"2. The decedent, Herbert L. Dibble, under the provisions of his last will and testament, which was admitted to probate by this court on April 16, 1948, bequeathed twenty five (25) shares of common stock in Carton Service, Inc., to each of his three daughters, namely, the defendants, Elvira Dibble Baker, Elaine Dibble Williams and Eunice Dibble O'Neil, and bequeathed and devised the balance of his estate, cash, stocks, real estate and all personal possessions to his wife, Jewell.

"3. The defendant, Jewell G. Dibble, was appointed by this court and qualified as the administratrix with the will annexed of Herbert L. Dibble, deceased.

"4. The plaintiff, Inez F. Dibble, by a separate

written instrument, filed contemporaneously with her petition herein, elected to reject the provisions of the last will and testament of Herbert L. Dibble, deceased, and to take under the statute of descent and distribution all of the rights, privileges and interests as the surviving spouse of the decedent, Herbert L. Dibble.

"5. The evidence shows that the plaintiff, Inez F. Dibble, and the decedent, Herbert L. Dibble, lived together as husband and wife, with their three daughters, the defendants, Eunice Dibble O'Neil, Elaine Dibble Williams and Elvira Dibble Baker, who were then young children, from 1916 to 1926, in Clyde, Ohio, and in Middletown, Ohio, during which time the plaintiff and decedent treated each other as husband and wife and were reputed as such in those communities.

"6. In 1925, the plaintiff and the defendants, Eunice Dibble O'Neil, Elaine Dibble Williams, and Elvira Dibble Baker, removed to the state of Michigan, and the decedent to Richland county, Ohio.

"7. Thereafter and until his death, the decedent, Herbert L. Dibble, lived in Richland county, Ohio, and the plaintiff, Inez F. Dibble, lived in Jackson, Michigan, and the decedent and plaintiff did not live together or cohabit as husband and wife.

"8. The decedent, Herbert L. Dibble, and the defendant, Jewell G. Dibble, were married at Plymouth, Ohio, on January 6, 1948, by Reverend Melanchton Paetznick, a duly ordained and licensed minister of the Gospel, a license for such marriage having been issued to them by this court, and thereafter they cohabited together as husband and wife in this county until the death of the decedent.

"9. The plaintiff, Inez F. Dibble, had knowledge of the intended marriage between the decedent and the defendant, Jewell G. Dibble, before such marriage was consummated, and the plaintiff remained silent and passive until after the death of the decedent.

"Conclusions of law.

"1. The plaintiff, in order to maintain her action, offered herself as her own witness to give testimony in her own behalf, to which counsel for the defendant, Jewell G. Dibble, objected, and the objection was sustained by the court.

"Under the provisions of Section 11495, General Code of Ohio, the plaintiff, Inez F. Dibble, was not a competent witness to testify to facts tending to establish her alleged marriage to the decedent, Herbert L. Dibble.

"2. The plaintiff alleged in her petition that she and the decedent, Herbert L. Dibble, were married on June 15, 1909. There is no evidence that the plaintiff and the decedent entered into a statutory or ceremonial marriage, and, therefore, the court is required to determine whether or not they were married at common law.

"An agreement to marry *in praesenti*, made by parties competent to contract, accompanied and followed by cohabitation, as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.

"A common-law marriage, in Ohio, must be established by clear and convincing evidence. While such agreement to marry *in praesenti* must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside.

"Every case bearing upon the subject of common-law marriage must be decided upon its own peculiar facts. The competent evidence in this case does not establish a common-law marriage between the plaintiff and the decedent.

"3. If the testimony proffered by the plaintiff were admissible and considered by the court, together with the competent evidence in this case, all of such evidence would not establish a valid common-law marriage between the plaintiff and the decedent in Milwaukee, Wisconsin, on June 15, 1909, as claimed by the plaintiff. The plaintiff proffered testimony that she and the decedent were residents and citizens of the state of Illinois prior to and after June 15, 1909, the date of her alleged marriage. On that date, a common-law marriage by a citizen of the state of Illinois was invalid regardless of where it was contracted.

"4. The evidence is clear and undisputed that the defendant, Jewell G. Dibble, and the decedent, Herbert L. Dibble, were legally married on January 6, 1948, and that such marriage status continued until the death of the decedent.

"5. The plaintiff, Inez F. Dibble, having failed to establish her marriage to the decedent, Herbert L. Dibble, as alleged in her petition, by evidence as required by law, is not the surviving spouse of Herbert L. Dibble, deceased, and is not entitled to share in his estate.

"6. The defendant, Jewell G. Dibble, having. established her marriage to the decedent by clear and undisputed evidence, is the surviving spouse of Herbert L. Dibble, deceased, and the person named and referred to in his last will and testament as 'my wife, Jewell.' As the surviving spouse of Herbert L. Dibble, deceased, the defendant, Jewell G. Dibble, is entitled to the property exempt from administration, and to the year's allowance which were set off and allowed to the surviving spouse in the inventory and appraisement of the estate of Herbert L. Dibble, deceased, and to all other rights, benefits and privileges provided for the surviving spouse by statute.

"7. Under the last will and testament of Herbert L. Dibble, deceased, the defendants, Eunice Dibble O'Neil, Elaine Dibble Williams and Elvira Dibble Baker, are each entitled to twenty-five (25) shares of the common stock of Carton Service, Inc., and the defendant, Jewell G. Dibble, is entitled to the balance of the estate of Herbert L. Dibble, deceased."

The last six assignments of error can and will be discussed together as they involve the same propositions.

The first question presented is: Did the plaintiff and decedent contract or enter into a lawful marriage prior to January 6, 1948? Second: If so, was that marriage ever legally terminated prior to January 6, 1948?

Common-law marriages are legal in Ohio, and between parties competent to contract the following things are necessary to consumate such a marriage, viz.: First, there must be a contract in words of present tense; second, such contract must be followed by cohabitation; and, third, according to some authorities, there must be a holding out and reputation as husband and wife in the community in which the parties reside. In as much as this third element is present in the instant case a discussion as to its necessity under other circumstances is not warranted. Suffice it to say that this court has had the question of common-law marriages before it in two recent cases, to wit, *Abbott* v. *Industrial Commission,* 80 Ohio App., 7, 74 N. E. (2d), 625, and *Ryan* v. *Ryan,* 84 Ohio App., 139, 86 N. E. (2d), 44. Following the case of *In re Estate of Redman,* 135 Ohio St., 554, 21 N. E. (2d), 659, this court took the position that the agreement *in praesenti* must be shown by direct evidence and applied that theory in the case of *Markley* v. *Hudson, supra.* However, when the Supreme Court reviewed this case (143 Ohio St., 163), that court held, as shown by the syllabus:

"1. An agreement to marry *in praesenti*, made by parties competent to contract, accompanied and followed by cohabitation, as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.

"2. While such agreement to marry *in praesenti* must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside."

On page 167 the court said:

"This court still adheres to the doctrine that it is essential to show an agreement between the parties *in praesenti* to become husband and wife in order to establish a common-law marriage, but this does not mean that such proof must establish *an express agreement resulting in contract,* or that *such result* may not be established by circumstances from which an agreement *in praesenti* may be inferred." (Emphasis added.)

Construing this language, it is obvious that the antecedent of *"such result"* is "common-law marriage."

When the Supreme Court says that the proof of an agreement *in praesenti* need not be proof of *"an express agreement resulting in contract,"* it can mean only that the agreement can be implied and in accordance with the second paragraph of the syllabus it may be established by circumstantial evidence showing the conduct and status of the parties in the community in which they reside.

In the *Markley case, supra,* there was neither proof of a ceremonial marriage nor of the time or place of any agreement *in praesenti* to marry. All this was established by circumstantial evidence of reputation

and living in the community thereafter. As to when and where the marriage or agreement took place was not in the record. Whether it was in a state which did or did not recognize common-law marriages does not appear. Yet in the face of that situation the Supreme Court said that the marriage could be established by proof of reputation in the community in which they lived as establishing a previously implied contract of intention *in praesenti*, which if coupled with cohabitation would establish a valid marriage.

In the instant case it is our judgment that the evidence both from the witnesses and from the exhibits is not only clear and convincing but overwhelming that all the elements necessary to constitute a common-law marriage are present. The sworn statement of the decedent in his marriage license application that he had a wife living but was divorced, together with his statements in the insurance application and policy that Inez Dibble was his wife, is most decisive.

The defendant argues that the marriage of these parties, if it ever existed, must have occurred on June 15, 1909, as alleged in the petition and that of this there is no proof. It is to be noted that the petition does not allege where they were married or in what manner. Since we cannot consider the proffered testimony of the plaintiff, all we know is that this family consisting of a reputed husband and wife and three daughters moved from Chicago, Illinois, to Clyde, Ohio, in September 1916, and that the oldest daughter was born in 1911. From this, the argument proceeds that the presumption is that the marriage was contracted in the state of Illinois which did not recognize common-law marriages and consequently the relationship being initially meretricious could not become valid in Ohio. Under the state of the record we do not think that there is a more probable inference that

these people were married in Illinois than anywhere else. But even if they did originally come together under a void contract or meretricious relation, when they moved to Ohio in 1916, and thereafter cohabited in Ohio as husband and wife, a common-law marriage could be established here. To this proposition this court is committed. In the case of *Ryan* v. *Ryan,* *supra,* the court quoted with approval the case of *Dirion* v. *Brewer,* 20 Ohio App., 298, 150 N. E., 818, the seventh paragraph of the syllabus of which reads as follows:

"If parties agreed to live together as husband and wife, and followed that by present cohabitation, irrespective of illicit relation which may have been starting of their relationship, it would constitute a common-law marriage."

This position is supported further in 26 Ohio Jurisprudence, 83, Section 75, where it is stated:

"Marriage may be proved from acts of recognition, cohabitation, birth of children, and like circumstances, even where the parties originally came together under a void contract, and where the intercourse at the commencement was illicit."

In *Industrial Commission* v. *Miller,* 18 Ohio Law Abs., 244, it is held, as shown by the second headnote:

"Illicit relations on the part of a man and woman in a foreign country will not prevent the consummation of a common-law marriage in Ohio after the woman has at the man's request, come to this country to live with him as his wife and has lived with him for twenty-five years, during which time she has borne him two children, which were christened as the children of such man and wife."

However, there is no evidence in this case that the relations of these parties were in the first instance illicit. On the contrary the presumption is that their

relationship was legal. It is not necessary to invoke the doctrine above set forth. However, in this connection it is to be noted that in the *Ryan case, supra,* there had been a ceremonial marriage to which there had been an impediment in the existence of a living spouse not divorced. This court, following the case of *Johnson* v. *Wolford,* 117 Ohio St., 136, 157 N. E., 385, held that upon the removal of the impediment by the death of the previous husband a continued living together as husband and wife constituted a common-law marriage. We can see no reason why the same principle should not be applied where the initial marriage was a common-law marriage. Both are valid.

As is said in the case of *Umbenhower* v. *Labus,* 85 Ohio St., 243, 238, 97 N. E., 832:

"This method of matrimony is called a common law marriage as distinguished from that prescribed by statute. A contract of marriage is essential in either case. The performance of a mere ceremony does not constitute a marriage. It must follow and be founded on contract. In one case the consummation of the contract may be celebrated and observed with or according to statutory ceremony. In the other, the evidence of the marriage, in part at least, consists in the immediate and continued course of conduct of the parties in reference to each other in their domestic and social life. The contract of marriage need not be in writing in either, but may exist in parol. If it is ceremonially solemnized, the evidence of its consummation may be made a matter of record, if authorized by statute, and may be proved by eye witnesses, admissions, cohabitation, etc., if the record evidence is not made, or if made, is lost or destroyed."

In view of the above considerations it is consequently our judgment that the relationship of these parties prior to coming to Ohio, in 1916, is not decisive of the

question here presented, but that it is their relationship after 1916, in Ohio, which determines the question.

It is further argued by the defendant that the finding of facts by the trial court cannot be disturbed by this court unless they are manifestly against the weight of the evidence. We recognize the import of the question presented.

In the *Markley case, supra,* a special interrogatory was presented to the jury as follows:

"Did William T. Markley and Eleanor Hudson Markley enter into a mutual contract of present marriage accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they lived?"

This interrogatory was answered in the affirmative. The court then stated:

"This interrogatory was answered in the affirmative. It follows, of course, that if there was probative evidence in the record to sustain this verdict of the jury, the Court of Appeals erred in reversing the judgment of the Probate Court and in rendering final judgment for the plaintiffs."

The instant case was tried to the court and since the court made certain findings of fact, these stand on the same footing as the findings of a jury in answer to interrogatories. They cannot be disturbed if the manifest weight of the evidence is not contrary thereto. However, inasmuch as the evidence in this case is not in dispute, the accuracy of the finding of facts can be determined from a careful reading of the record. We find that the finding of facts Nos. 1, 2, 3, 4, 5, 8 and 9 are correct. Finding of fact No. 6 is erroneous in that the decedent went to Kalamazoo to work prior to his going to Richland county, Ohio. Finding of fact No. 7 is incorrect in finding that after 1925 plaintiff and decedent did not cohabit as man and

wife. It is true they were living separate and apart but the evidence of the daughters is that he was frequently at the home in Jackson, Michigan; that he remained there over the week ends and Christmas, and referred to and introduced plaintiff as his wife. There is no evidence that they did not cohabit and the inference from the above facts is that they did.

Although the finding of facts made by the court is correct within the above limitations, it is not complete. It is incomplete in that all the evidence, both testimony and documentary, shows that at least until January 30, 1942, when decedent referred to himself in a mortgage as a single man, he himself treated the plaintiff as his wife, and that his relatives and the people who knew them so considered her.

Consequently, it is our judgment that the entire evidence in this case shows clearly and convincingly that the plaintiff and the decedent did contract a valid marriage and that such conclusion is mandatory under finding of fact No. 5 and in the light of all the evidence in the case. It follows that the court erred in its conclusion of law that "the competent evidence in this case does not establish a common-law marriage between plaintiff and decedent."

Only one other question remains and that is whether this marriage relation between plaintiff and decedent was legally terminated prior to the marriage of decedent to Jewell Ford Dibble on January 6, 1948. If it was not, that marriage was void and the plaintiff is the widow and surviving spouse of decedent and entitled to her statutory rights as such.

This presents the question as to where the burden of proof was placed. The defendant stood entirely upon the proposition that the plaintiff and decedent were never married. She neither pleaded, proved, nor claimed a divorce between the parties.

While the rule in some other states is to the contrary, it is stated in 26 Ohio Jurisprudence, 81, Section 72:

"But in Ohio it cannot be presumed that parties once married have been divorced, in the absence of proof, and there is no presumption of divorce in support of the legality of a later marriage. Even if there were such a presumption, it might be rebutted by proof to the contrary."

This text statement is based upon the case of *Industrial Commission* v. *Dell, Exrx.,* 104 Ohio St., 389, 135 N. E., 669, 34 A. L. R., 422. It is true that in that case both marriages were ceremonial, but Judge Marshall in the discussion went into detail as to why the court did not follow the contrary rule but announced the above rule for this state. These reasons which we need not repeat here are just as cogent when applied to a common-law marriage as to a ceremonial marriage. See, also, *Smith* v. *Smith,* 5 Ohio St., 32; *Carmicheal* v. *State,* 12 Ohio St., 553; *Evans* v. *Reynolds,* 32 Ohio St., 163.

Consequently, it is our judgment that when a valid marriage is proven it continues until legally dissolved by death or divorce and this is so whether it be a ceremonial or a common-law marriage. The burden of proof is then on the one who claims its dissolution to prove it. There is no such proof in this case. There are, however, three circumstances which are to be considered in the light of whether they overcome this presumption.

1. The designation by the decedent of himself as a single man in the mortgage which he gave in 1942.

2. His statement in his marriage license application that he was divorced.

3. The fact that the plaintiff knew of the impending marriage a few days before it took place and did nothing.

We do not think that these circumstances are sufficient to overcome the presumption. Nos. 1 and 2 are self-serving declarations, No. 1 perhaps for the purpose of avoiding the bother of having the wife sign. No. 2 was necessary in order that he could get a license to marry after he had made the statement that he had been once married and had a wife living. No. 3 is of very little probative force because we cannot have a divorce by estoppel or establish the validity of a marriage by estoppel and in any event there was little or nothing which the plaintiff could do.

However, if we concede that these facts were sufficient to overcome the presumption, the plaintiff did produce the testimony of the clerk of courts who stated from an examination of the records of his office that there had never been a divorce between plaintiff and deceased in Richland county, Ohio. During the period of time in controversy the decedent was a resident of Richland county, with the exception of possibly two years, from 1943 to 1945, when, while maintaining his presidency of the Carton Service Company at Shelby, he divided his time between there and Middletown. There is no evidence, however, that he ever discontinued his residence at Shelby. Under the above facts this proof was sufficient to sustain the burden in the light of the presumptions and other facts in evidence above referred to. Consequently, it is our judgment that the marriage of the decedent to the plaintiff was valid and subsisting at the time of his death and that his ceremonial marriage to Jewell Ford was void. It follows that the plaintiff is the widow and surviving spouse of the decedent and entitled to her rights as such and that the conclusion of law of the trial court to the contrary is erroneous.

This result is not inequitable. The legitimacy of the plaintiff and the decedent's three daughters is in-

volved under the pleadings. They are parties to this case. The holding of the trial court that their mother and father were never married would place their legitimacy under a lasting cloud. It is difficult to see how the defendant Jewell Ford can assert the fact that the daughters could inherit as legitimate children and at the same time deny the validity of the marriage which made them legitimate. Plaintiff and decedent lived together about 15 years and raised this family. The will is not contested and Jewell Ford will still get a sizeable portion of the estate, having lived with the defendant less than three months. Plaintiff is entitled to her share.

It follows that the judgment of the trial court is reversed and final judgment entered for the plaintiff adjudging her to be the widow and surviving spouse of the decedent.

*Judgment reversed.*

MONTGOMERY, P. J., and McCLINTOCK, J., concur.